OPINION
{¶ 1} Defendant-Appellant J.B. Jones, Jr., appeals from his conviction and sentence for Possession of Cocaine and Felonious Assault, with a firearm specification. Jones presents six assignments of error, many of which overlap to some degree.
 {¶ 2} Jones alleges that the trial court erred in failing to adequately investigate his request for a new attorney. Jones offers numerous arguments in support of his claim of ineffective assistance of counsel. He also contends that the trial court made several erroneous evidentiary rulings. Jones insists that his convictions are against the manifest weight of the evidence and that they aere not supported by sufficient evidence. He argues that he was denied a fair trial due to prosecutorial misconduct. Finally, he concludes that he was denied a fair trial due to cumulative error.
 {¶ 3} We conclude that the trial court did adequately investigate Jones' request for a new attorney; that the trial court did not make erroneous evidentiary rulings; that Jones' convictions are supported by sufficient evidence, and that this conviction for Possession of Cocaine is not against the manifest weight of the evidence; and that Jones was not denied a fair trial through either prosecutorial misconduct or cumulative error.
 {¶ 4} However, we agree with Jones that his trial counsel was ineffective for having failed to request a jury instruction on accident. Our conclusion in this regard is based upon the particular facts and circumstances of this case, where the prosecutor, in final closing argument, suggested that even if Jones did not intend to shoot his victim he should still be held criminally responsible because he brought a gun into the situation, giving rise to the peril that resulted in the shooting. Therefore, Jones' conviction for Felonious Assault is Reversed, his conviction for Possession of Cocaine is Affirmed, and this cause is remanded for further proceedings.
 I {¶ 5} The State presented the following evidence. One April day in 2003 Jones' former live-in girlfriend, Jacklyn Moore, was at his apartment a couple of times. Later in the day, Jones found Moore at a friend's apartment and accused her of stealing drugs from his apartment. Moore saw that Jones had a gun in his back pocket. Although Moore denied taking the drugs, Jones forced her to return with him to his apartment to look for them. During the ride to the apartment, and once there, the two continued arguing. At his apartment, Jones pulled the gun from his pocket and pointed it at Jones, demanding that she find his missing drugs. Moore continued to deny taking the drugs.
 {¶ 6} Jones began to hit Moore. She knocked the gun out of his hand, and it landed on the floor. Moore ran out the door and tried to hold it shut while Jones screamed threats to kill her. Jones got the door open and pointed the gun at Moore. She pushed the gun down, and it discharged, hitting her in the thigh. The gun ended up on the floor, and Jones began choking Moore. She grabbed a vase filled with coins and began to hit Jones with it. When Jones finally let go, he headed straight for the gun. Moore ran out the door and went to another apartment, where she called the police.
 {¶ 7} In his defense, Jones' version of the altercation was different. He testified that he never had a gun — that Moore took a gun out of a dresser drawer and he tried to take it away from her. As they wrestled, the gun discharged, hitting Moore in the thigh.
 {¶ 8} After he was arrested, Jones consented to a search of his apartment, during which officers found a baggie of cocaine visible between the cushions on his couch. Jones had spent the day lying on the couch because he was ill. Nobody else had been on the couch that day.
 {¶ 9} Jones was indicted on one count of Possession of Cocaine and one count of Felonious Assault, with a firearm specification. After a jury trial, Jones was found guilty as charged. Jones was sentenced to a total of five years imprisonment. From his conviction and sentence, Jones appeals.
 II {¶ 10} Jones' First Assignment of Error is as follows:
 {¶ 11} "The trial court erred in failing to afford appellant a proper hearing with respect to his allegations of defense counsel's ineffective assistance."
 {¶ 12} When a defendant asks the trial court for a new attorney during the course of trial, the trial court must adequately investigate the defendant's complaint. State v. Deal (1969), 17 Ohio St.2d 17, 18-19,244 N.E.2d 742. In this case, the trial court conducted an ample inquiry into Jones' request for a new attorney.
 {¶ 13} During his trial, Jones asked the court for a new attorney, because he was upset that his attorney did not ask certain questions of witness Terry Bell that Jones wanted asked. Specifically, Jones wanted counsel to try to impeach Bell with a prior, allegedly inconsistent statement that she had made to the private investigator appointed to work with the defense.
 {¶ 14} Defense counsel twice indicated that his decision not to ask the questions that Jones requested was a strategic choice. First, counsel explained that he refused to ask certain questions because the trial court's pre-trial rulings indicated that the court would not permit the questions to be answered. Second, counsel indicated that he had already asked a requested question "because I'd already asked and got an answer that was, uh . . . far more relevant than the one he wants to talk about. . . ."
 {¶ 15} Moreover, when the court explained to Jones that the investigator could be called later, by the defense, to impeach Bell, Jones seemed satisfied and repeatedly apologized to the court. At that point the court was justified in believing that Jones was satisfied once it had been explained to him that the witness could be impeached later in the trial with her statement to the investigator. Thus, at that point, there was nothing more for the court to pursue, especially in view of the reticence that a trial judge should have in getting too deeply into issues of defense strategy in a colloquy on the record in which the prosecutor is participating.
 {¶ 16} Because the trial court conducted an adequate inquiry into Jones' request for a new attorney, Jones' First Assignment of Error is without merit, and it is overruled.
 III {¶ 17} Jones' Second Assignment of Error is as follows:
 {¶ 18} "Appellant was denied his constitutionally guaranteed right to effective assistance of counsel."
 {¶ 19} In his Second Assignment of Error, Jones presents numerous arguments in support of his claim that his trial counsel was ineffective. In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance. Id. The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. Id. Hindsight may not be allowed to distort the assessment of what is reasonable in light of counsel's perspective at the time. State v. Cook (1992), 65 Ohio St.3d 516, 524, 605 N.E.2d 70. Even assuming that counsel's performance was deficient, the defendant must still show that the deficiency had an effect on the judgment. State v.Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's deficiencies, the result of the proceeding would have been different. Id.
 {¶ 20} Jones first claims that his trial counsel was ineffective because he failed to request a jury instruction pertaining to accident, in connection with the charge of Felonious Assault. We agree.
 {¶ 21} To be entitled to a jury instruction on accident, there must be evidence to support the argument that the appellant acted lawfully and that the result was unintended. State v. Ross (1999),135 Ohio App.3d 262, 276-77, 733 N.E.2d 659, citations omitted. Jones offered evidence to this effect in this case. Jones testified that Moore took the gun out of a dresser. When Jones tried to take it away from her, the two wrestled, and the gun went off. The jury could have believed Jones' testimony, which was not inherently incredible or implausible, but not having been presented with an accident instruction, the jury may not have understood that accident is a defense. See, e.g., State v.Underdown (1997), 124 Ohio App.3d 675, 681, 707 N.E.2d 519.
 {¶ 22} There have been cases in which courts have held that an attorney's failure to request an accident instruction does not rise to the level of ineffective assistance if the court's general charge was otherwise correct. See, e.g., State v. Skeens, Noble App. No. 286, 2001-Ohio-3476; State v. Thomas (Aug. 29, 1997), Hamilton App. No. C-960242, citing State v. Stubblefield (Feb. 13, 1991), Hamilton App. No. C890597, in turn citing State v. Sims (1982), 3 Ohio App.3d 331,335. See, also, State v. Smith (May 10, 1996), Miami App. No. 95-CA-17. However, the case before us is distinguishable from those cases because in this case the prosecutor effectively argued, in her final closing argument, that even if Jones had no intent to shoot Moore, i.e., even if the shooting was accidental, Jones should still be held responsible, because he brought the gun into the situation.[1] Had the State not argued, in effect, that even if the shooting was accidental, Jones was to blame because he brought the gun into the altercation, thereby creating the risk that resulted in Moore being shot, we would be inclined to conclude that the court's correct instructions on the knowingly culpability standard would have avoided any substantial likelihood that the failure to have requested an instruction on accident affected the outcome of the trial. Accordingly, counsel should have requested an accident instruction, and his failure to have done so undermines confidence in the validity of the outcome to the extent that reversal of the Felonious Assault conviction is warranted.
 {¶ 23} Next, Jones argues that trial counsel was ineffective because he failed to ask for an other-acts limiting instruction regarding his prior criminal record. Counsel's decision not to request a limiting instruction may have been a strategic decision in order to avoid drawing further attention to Jones' criminal history. Trial strategy decisions will not be the basis of a finding of ineffective assistance. State v.Dixon, 101 Ohio St.3d 328, 2004-Ohio-1585, ¶ 52, citation omitted. Moreover, even if counsel should have requested a limiting instruction, Jones must still demonstrate that he was prejudiced by counsel's failure in order to prevail upon an ineffective assistance of counsel claim. For the reasons discussed in response to Jones' Fourth Assignment of Error, we conclude that it is unlikely that a lack of a limiting instruction caused the jury's finding of guilt. In other words, we conclude that it is unlikely that Jones would have been acquitted if the instruction had been given.
 {¶ 24} Third, Jones alleges that counsel failed to thoroughly and effectively argue against the admission, under the excited-utterance exception to the hearsay rule, of Moore's statement to Officer Cooper that Jones had shot her. According to Jones, counsel should have argued that evidence of Moore's drug usage invalidated the excited-utterance exception. We disagree.
 {¶ 25} In order to be admissible as an excited utterance under Evid.R. 803(2), a statement must concern some occurrence startling enough to produce a nervous excitement in the declarant; the declarant must have personally witnessed the occurrence; and the statement must be made before there was time for that nervous excitement to lose domination over the declarant's reflective faculties. State v. Huertas (1990),51 Ohio St.3d 22, 31, 553 N.E.2d 1058, cert. dismissed, (1991),498 U.S. 336, 111 S.Ct. 805. The record supports a conclusion that those requirements apply to Moore's statement. The only question, then, is whether her drug usage should have invalidated the excited-utterance exception.
 {¶ 26} The evidence in this case did not establish that Moore was actually intoxicated when she told Officer Cooper that Jones had shot her. For example, toxicology screens only showed that Moore had used marijuana and cocaine within the two weeks preceding the altercation. Moreover, Moore's treating physician testified that Moore was not under the influence of drugs while she was being treated for her gunshot wound. Given this evidence, counsel was not deficient for not having sought to exclude Moore's excited-utterance statement.
 {¶ 27} Jones also presents a cursory claim that counsel was ineffective for failing to object to leading questions asked by the State of witnesses Terry Bell and Ashley Wilson. However, a review of the questions cited reveals that none of these questions were leading. That is, none of the questions suggested an answer to the witnesses. State v.D'Ambrosio (1993), 67 Ohio St.3d 185, 190, 616 N.E.2d 909. Accordingly, counsel had no reason to object to those questions.
 {¶ 28} Furthermore, the failure to object to leading questions will almost never rise to the level of ineffective assistance of trial counsel. There is no reason to object to leading questions that are intended to elicit routine or undisputed facts. These facts are clearly going to be established in any event, and leading questions may simply expedite the proceedings. Even if the testimony elicited involves disputed or controversial facts, experienced trial counsel may reasonably decide not to object. The effect of leading questions on the responses elicited is something familiar to most jurors; it is within the ken of everyday experience. Many lay jurors will understand, intuitively, at least, that testimony elicited without the aid of leading questioning is more impressive, and trial counsel may reasonably conclude that forcing opposing counsel to ask non-leading questions will just make a witness's adverse testimony more impressive to the jury, and hence more damaging.
 {¶ 29} Next, Jones insists that counsel failed to object to inadmissible hearsay when Dr. Whitmill testified regarding the level of Moore's pain. Specifically, Jones says that counsel should have objected when the doctor used Moore's medical records to refresh her recollection. However, Jones does not indicate how he could possibly have been prejudiced by counsel's failure to object to this testimony. An objection would merely have served to give the State the opportunity to lay a stronger foundation for the evidence.
 {¶ 30} Similarly, Jones argues that counsel should have objected to testimony by Officer Hartman that Jones' injuries were not life-threatening and did not require immediate medical attention. Without any explanation, he claims that the extent of his injuries was relevant to his accident defense. Even if this is true, the jury was made fully aware of the extent of his injuries and that he was later transported to the hospital for stitches. Thus, there was no basis for objection by counsel.
 {¶ 31} Jones alleges that counsel failed to sufficiently investigate and prepare for trial, resulting in his eliciting damaging testimony and making damaging statements. Specifically, Jones begins by faulting his attorney for eliciting testimony from Officer Rasor that a spent cartridge found on the floor of his apartment could have come from a box found in Jones' dresser. However, the same information also came come from the State's expert witness, Timothy Duerr. We do not conclude that counsel's cross-examination unduly emphasized this information.
 {¶ 32} Similarly, Jones blames his attorney for cross-examining on the weight of the cocaine found on Jones' couch. As the weight of the cocaine is an element of the offense, required to be proven by the State beyond a reasonable doubt, we cannot fault counsel for exploring this evidence. Moreover, this evidence was merely cumulative with evidence offered by the State's expert witness, Michael Wathen.
 {¶ 33} Both instances are examples of trial strategy and not evidence of a failure to investigate. Accordingly, we do not conclude that counsel was ineffective for eliciting this testimony.
 {¶ 34} Jones also argues that counsel failed to object to five instances of prosecutorial misconduct. However, because none of the statements rose to the level of misconduct, counsel was not ineffective for choosing not to object to them.
 {¶ 35} The test for prosecutorial misconduct is whether the remarks made by the prosecutor were improper, and, if so, whether they prejudicially affected a substantial right of the accused. State v. White
(1998), 82 Ohio St.3d 16, 22, 693 N.E.2d 772. Prosecutors are entitled to some latitude when regarding what the evidence has shown and the inferences that can be drawn. State v. Ballew (1996), 76 Ohio St.3d 244,255, 667 N.E.2d 369. Furthermore, a prosecutor's closing argument must be reviewed in its entirety. Id. The touchstone of analysis "is the fairness of the trial, not the culpability of the prosecutor." State v. Myers,97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 140, citation omitted.
 {¶ 36} Jones first insists that counsel should have objected when the prosecutor asked him about the number of women that he dated. Jones responded to the aggressive questioning by claiming that he is a likeable man. Therefore, it is quite possible that counsel found the answer more helpful to the defense than the question was objectionable. We have reviewed the entirety of the State's cross-examination of Jones. Although Jones was exposed to some tough, argumentative questioning, he seemed to stand up to it well. Experienced defense counsel will often not object when the prosecutor is asking the defendant argumentative questions if the defendant seems to be holding his own. In that situation, there is no reason to give the jury the impression that the defendant needs the intervention of counsel to protect the defendant from withering cross-examination. The defendant's standing up to the argumentative cross-examination, without the aid of defense counsel, will be more impressive to the jury. Trial strategy decisions will not be the basis of a finding of ineffective assistance. Dixon, supra, at ¶ 52, citation omitted.
 {¶ 37} Jones also claims that the prosecutor mischaracterized evidence during her cross-examination of Jones. At one point, he was confused about what time period the prosecutor was referring to when she asked about Moore being at Jones' before the shooting. When Jones asked for clarification, the prosecutor answered, "The time prior to when you shot her." While the answer was not particularly helpful, it was not a mischaracterization of the evidence, since the State had already presented evidence from more than one source that Jones shot Moore. Accordingly, there was no basis for counsel to object.
 {¶ 38} Additionally, Jones contends that counsel should have objected when the prosecutor interrupted his answers twice during cross-examination. In the first instance, Jones and the prosecutor were talking over one another, but Jones was able to make his point. The second time, the prosecutor cut off a lengthy response. If Jones felt that he needed to elaborate on the answers that the prosecutor interrupted, he could have made clarifications during his re-direct examination. Therefore, counsel had no need to object.
 {¶ 39} Jones also alleges that counsel should have objected when the prosecutor stated in closing argument that the cocaine found on the couch fell out of Jones' pocket. However, this was a reasonable inference from the evidence that Jones had spent the day on the couch because he was ill, and that nobody else had been on the couch that day. Given the latitude that prosecutors are allowed in drawing inferences from the evidence presented, there was no basis for counsel to object to this statement.
 {¶ 40} Finally, Jones argues that counsel should have objected to the prosecutor's inappropriate appeal to emotion during closing argument. However, a review of the prosecutor's entire closing argument reveals that she was not appealing to emotion, but was instead dissuading the jury from possibly faulting Moore for struggling with Jones over the gun rather than immediately running away from him. This is a permissible argument when Moore admittedly did struggle with Jones over the gun before trying to leave the apartment.
 {¶ 41} Jones' final contention regarding his claim that counsel was ineffective is that counsel failed to respond to the State's motions in limine and motion to declare Moore an unavailable witness. While it is true that counsel did not file written responses, the record reflects that he did respond orally. In fact, in the trial court's December 12, 2003 Decision, Entry, and Order, the court stated that it had reviewed the motions and discussed them with attorneys for both sides at the final pre-trial conference. Therefore, the record refutes Jones' claim that counsel never responded to the State's pre-trial motions.
 {¶ 42} We agree that counsel should have requested a jury instruction on accident, and therefore his Second Assignment of Error is sustained on this ground alone. However, we find his other arguments that his trial counsel was ineffective to be without merit.
 IV {¶ 43} Jones' Third Assignment of Error is as follows:
 {¶ 44} "The trial court erred in depriving appellant of his right to a fair trial through erroneous evidentiary rulings."
 {¶ 45} In support of this assignment of error, Jones presents three claims. First, he insists that the trial court erred in finding Jacklyn Moore to be an unavailable witness. Second, he claims that the trial court erred when it refused to allow him to cross-examine witness Terry Bell regarding Moore's drug use. Finally, Jones argues that the trial court erred in allowing evidence under the excitedutterance exception to the hearsay rule. We disagree.
 {¶ 46} Jones first alleges that the trial court erred in finding Jacklyn Moore unavailable as a witness. A review of his argument shows that what he is really claiming is not that she was unavailable, but that his Confrontation Clause right was violated by the presentation of Moore's preliminary hearing testimony, because counsel did not have a sufficient opportunity to cross-examine her about the cocaine found in Jones' apartment.
 {¶ 47} The Sixth Amendment of the United States Constitution establishes a defendant's right to confront the witnesses who testify against him. However, the Sixth Amendment incorporates a few long-established exceptions. One of these is that an absent witness's prior testimony is admissible if that witness is unavailable for trial and if the defendant had an opportunity to cross-examine that witness.Crawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354. Specifically, the United States Supreme Court has repeatedly held that prior trial or preliminary hearing testimony is admissible if the defendant had an adequate opportunity to cross-examine the witness. Id., at 1367-68, citations omitted.
 {¶ 48} Jones argues that he was not able to adequately cross-examine Moore on her drug use during the preliminary hearing, implying that he was unaware of it until after the hearing. However, Jones testified that he asked Moore to move out because he believed that she stole his money in order to buy drugs. Jones also testified that the cause of the altercation was his belief that Moore stole his drugs. Clearly, Jones was aware of Moore's drug use long before the preliminary hearing, and he had ample opportunity to cross-examine her at that time.
 {¶ 49} Because Moore was unavailable for trial, and because defense counsel had an adequate opportunity to cross-examine her at the preliminary hearing, the trial court did not err in admitting that preliminary hearing testimony at trial.
 {¶ 50} Jones next insists that the trial court erred by not letting trial counsel cross-examine Bell regarding her knowledge of Moore's drug use. However, Jones failed to proffer whether Bell had any first-hand knowledge of Moore's drug use. Nor did he proffer what testimony Bell would have offered, had counsel been allowed to cross-examine her. Therefore, we assume that Bell's testimony would have been merely cumulative with Dr. Whitmill's testimony that Moore admitted being a drug user and that she had used both marijuana and cocaine during the two weeks prior to her altercation with Jones. Accordingly, we do not conclude that the trial court abused its discretion in refusing to allow this testimony.
 {¶ 51} Jones also argues that the trial court erred in admitting excitedutterance testimony by allowing Officer Cooper to testify that Moore told her that Jones had shot her. As explained above, however, this statement does fall squarely within the excited-utterance exception to the hearsay rule. Because a proper foundation was laid before the testimony was offered, we agree with the trial court that the statement was admissible as an excited utterance.
 {¶ 52} For these reasons, we conclude that the trial court did not abuse its discretion in making any of these evidentiary rulings. Therefore, Jones' Third Assignment of Error is overruled.
 V {¶ 53} Jones' Fourth Assignment of Error is as follows:
 {¶ 54} "Appellant's convictions were against the sufficiency and/or manifest weight of the evidence."
 {¶ 55} The Ohio Supreme Court has discussed at length the distinct legal concepts of "sufficiency of the evidence" and "manifest weight of the evidence." State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Id., at 386, citations omitted. In order to determine whether the State produced enough evidence to support a criminal conviction, a reviewing court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 56} On the other hand, the term "manifest weight of the evidence" concerns the inclination of the greater amount of credible evidence offered at trial to support one side of the issue rather than the other.Thompkins, supra, at 387. Weight is not a question of mathematics, but depends on its effect in inducing belief. Id. When a court of appeals reverses a judgment because a verdict was against the manifest weight of the evidence, the appellate court sits as a thirteenth juror and disagrees with the fact-finder's resolution of conflicting testimony. Id. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id.
 {¶ 57} Jones was convicted of Felonious Assault and Possession of Cocaine. Felonious Assault prohibits one from knowingly causing or attempting to cause physical harm to another by means of a deadly weapon, in this case, a handgun. R.C. § 2903.11(A)(2). Possession of Cocaine, in violation of R.C. § 2925.11(A), bans the knowing obtaining, possession, or use of between five and twenty-five grams of powdered cocaine.
 {¶ 58} When the evidence is viewed in a light most favorable to the State, a rational trier of fact could have found that sufficient evidence of Felonious Assault was presented by Moore's preliminary hearing testimony, the excited utterances she made after the shooting, and by Dr. Whitmill's observations, to warrant presenting the charge to the jury. Thus, there was sufficient evidence to put the Felonious Assault charge before the jury. However, in light of our decision to reverse Jones' Felonious Assault conviction for other reasons, we need not address his argument that it is against the manifest weight of the evidence.
 {¶ 59} As for the Possession of Cocaine conviction, the testimony of Terry Bell, Moore, and Jones himself, offered sufficient evidence that Jones constructively possessed the cocaine found on his living room couch to warrant presenting that charge to the jury. Jones accused Moore of stealing his drugs. He admitted he had spent the day lying on his couch because he was ill. There was no evidence that anyone else was on the couch that day. Based on these facts, a rational trier of fact could conclude that the cocaine found on Jones' couch belonged to Jones. The jury did not clearly lose its way in finding Jones guilty of Possession of Cocaine.
 {¶ 60} Because there was sufficient evidence of both crimes to warrant putting the charges before the jury, and because Jones' conviction for Possession of Cocaine is not against the manifest weight of the evidence, Jones' Fourth Assignment of Error is overruled.
 VI {¶ 61} Jones' Fifth Assignment of Error is as follows:
 {¶ 62} "Appellant was denied a fair trial through prosecutorial misconduct."
 {¶ 63} As explained in response to Jones' Second Assignment of Error, we find that there was no prosecutorial misconduct. Jones' Fifth Assignment of Error is overruled.
 VII {¶ 64} Jones' Sixth Assignment of Error is as follows:
 {¶ 65} "The cumulative effect of the errors occurring at trial deprived appellant of a fair trial."
 {¶ 66} Where no individual, prejudicial error has been shown, there can be no cumulative error. State v. Blankenship (1995),102 Ohio App.3d 534, 557, 657 N.E.2d 559. We have found only one instance of error, namely a single instance of ineffective assistance of trial counsel; therefore, we cannot find cumulative error. There are no multiple errors to cumulate. Jones' Sixth Assignment of Error is overruled.
 VIII {¶ 67} Jones' Second Assignment of Error having been sustained, and all of his other assignments of error having been overruled, his conviction for Felonious Assault is Reversed, his conviction for Possession of Cocaine is Affirmed, and this cause is Remanded for further proceedings consistent with this opinion.
Brogan, P.J., and Grady, J., concur.
[1] Specifically, the prosecutor argued: "Ladies and gentlemen, it's — it's like a — a person who goes and drinks a gallon of vodka and gets behind the — the — a wheel of a car and then hits a pedestrian in a crosswalk and says: `Oh, well, it's your fault, you got in my way.'" In that analogous situation, the prosecutor is arguing that a motorist should be convicted despite not having had any specific intent of assaulting the pedestrian, because the motorist created the situation that gave rise to the risk that the pedestrian would be hit.