[Cite as *State v. Hill*, 2021-Ohio-3899.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 21AP-16 |
| v. | : | (C.P.C. No. 18CR-5181) |
| Mark A. Hill, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 2, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

**On brief:** *Mark A. Hill*, pro se.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Mark A. Hill, pro se, appeals a judgment of the Franklin County Court of Common Pleas denying his petition for postconviction relief without an evidentiary hearing. For the following reasons, we affirm.

{¶ 2} The facts of this case are summarized in this court's decision resolving appellant's direct appeal. *State v. Hill*, 10th Dist. No. 19AP-711, 2021-Ohio-132. As relevant here, appellant was charged with aggravated burglary and felonious assault arising from an August 25, 2018 incident involving Martie Jacobs. At the time, Jacobs, age 53, resided in the home of Rita Hamm, the grandmother of appellant's girlfriend, Brittany Hamm. Jacobs suffers from debilitating arthritis and degenerative disc disease. Sometime that evening, an intoxicated Jacobs got into an argument with Brittany. According to Jacobs, Brittany

threatened him with a knife; he wrestled the knife from her, threw her on the floor, and then fell on top of her. Rita intervened and pushed Jacobs off Brittany. Following the incident, Jacobs went into his bedroom, shut the door, took his medications, and went to bed.

{¶ 3} Jacobs later woke from a light sleep to find appellant standing in his bedroom holding a sledgehammer. Appellant hit Jacobs with the sledgehammer in the face near his left eye. After Jacobs fell to the floor, appellant struck him with the sledgehammer on the other side of his face.

{¶ 4} After appellant and Brittany left the house, Rita discovered Jacobs on the bathroom floor covered in blood. Jacobs was transported to the hospital where he underwent a 12-hour surgery to reconstruct one eye socket and his jaw. He subsequently underwent extensive rehabilitation as well as multiple follow-up surgeries. Jacobs' medical records, including an x-ray, demonstrated significant trauma and damage to his skull. Further, a portion of the left side of his face is permanently disfigured.

{¶ 5} Appellant testified that Brittany called him after her argument with Jacobs and reported that Jacobs had punched her in the eye. Appellant drove to the house; Brittany was crying when he arrived. Appellant entered Jacobs' bedroom, confronted him about assaulting Brittany, and warned him to stay away from her. Jacobs took a swing at appellant. Appellant dodged the blow and hit Jacobs four times using only his fist; he denied striking Jacobs with a sledgehammer.

{¶ 6} The jury returned verdicts finding appellant not guilty of aggravated burglary but guilty of felonious assault. The trial court found appellant guilty of the repeat violent offender ("RVO") specification attached to the felonious assault charge. Following a sentencing hearing, the trial court imposed an aggregate 12-year term of incarceration.[1]

{¶ 7} In his direct appeal, appellant contended that his conviction for felonious assault was not supported by sufficient evidence and was against the manifest weight of the evidence.[2] Appellant also argued that the trial court erred in admitting evidence regarding

---

[1] Although represented by counsel, appellant, pro se, filed a Crim.R. 33 motion for new trial prior to the sentencing hearing. At the hearing, the trial court orally denied the motion pursuant to the prohibition against hybrid representation.

[2] Appellant did not challenge his conviction for the RVO specification.

his prior conviction for felonious assault. After reviewing the record, we found no merit to appellant's contentions and overruled his assignments of error. Accordingly, we affirmed the judgment of the trial court. *Hill*, 10th Dist. No. 19AP-711, 2021-Ohio-132, ¶ 50.[3] We denied appellant's subsequent pro se application for reconsideration and en banc consideration. *State v. Hill*, 10th Dist. No. 19AP-711 (May 13, 2021) (memorandum decision).[4]

{¶ 8} While his direct appeal was pending, appellant, on May 19, 2020, filed in the trial court a pro se petition for postconviction relief under R.C. 2953.21. Appellant raised six grounds for relief: (1) ineffective assistance of counsel due to trial counsel's failure to subpoena appellant's expert medical witness; (2) violation of his due process rights pursuant to the state's knowing presentation of false testimony at trial; (3) violation of his due process rights pursuant to the trial court's reliance on materially false and misleading information when imposing sentence; (4) ineffective assistance of counsel due to trial counsel's failure to subpoena his defense investigator; (5) ineffective assistance of counsel due to trial counsel's agreement to amend the indictment; and (6) denial of his right to a fair trial based upon the cumulative effect of constitutional errors.

{¶ 9} The state filed its response on May 29, 2020.[5] On December 17, 2020, the trial court issued a journal entry denying appellant's petition without holding a hearing.[6]

{¶ 10} Appellant timely appeals, assigning the following errors for our review:

> [I]. The trial court abused its discretion when denying appellant's ineffective assistance of counsel claim for failing to call Dr. Kennah as an expert witness, without an evidentiary hearing, based on an unreasonable determination of the facts and evidence contrary to clearly established constitutional law in violation of his rights in the 5th, 6th & 14th Amendments to

---

[3] The Supreme Court of Ohio declined discretionary review. *State v. Hill*, 162 Ohio St.3d 1440, 2021-Ohio-1399.

[4] The Supreme Court of Ohio declined discretionary review. *State v. Hill*, 164 Ohio St.3d 1405, 2021-Ohio-2742.

[5] By entry filed July 22, 2020, the trial court denied appellant's pro se motion to strike the state's response and request for leave to amend the petition.

[6] In the same journal entry, the trial court granted appellant's November 23, 2020 request for leave to file for summary judgment (accompanied by his "Affidavit of Summary Judgment") and motion to convert his motion to strike to his merit brief.

the United States Constitution and Sections 10 & 16, Article I of the Ohio Constitution.

[II]. The trial court abused its discretion when applying res judicata to deny appellant's claim that he was prejudiced and denied a fair trial due to the prosecution's knowing use of Martie Jacobs' false and perjured testimony, without an evidentiary hearing based on an unreasonable determination of the facts and evidence presented contrary to clearly established constitutional law in violation of his rights in the 5th and 14th Amendments to the U.S. Constitution and Section 16, Article 1 of the Ohio Constitution.

[III]. The trial court abused its discretion when unreasonably applying res judicata, in light of the facts and evidence presented, to deny appellant's claim that the trial court specifically relied upon false testimony and misinformation at sentencing, contrary to clearly established constitutional law in violation of his rights in the 5th & 14th Amendments to the U.S. Constitution and Section 16, Article 1 of the Ohio Constitution.

[IV]. The trial court abused its discretion when denying appellant's ineffective assistance of counsel claim for failing to call investigator Amy Slaven as an expert witness, without an evidentiary hearing, based on an unreasonable determination of the facts and evidence contrary to clearly established constitutional law in violation of the 5th, 6th & 14th Amendments to the U.S. Constitution and Sections 10 & 16, Article 1 of the Ohio Constitution.

[V]. The trial court abused its discretion when misapplying *Strickland* to deny appellant's claim of ineffective assistance of counsel for actively representing conflicting interests by agreeing to the amendment of the indictment at trial, without an evidentiary hearing, unreasonably determining the facts and evidence contrary to clearly established constitutional law in violation of his rights in the 5th, 6th & 14th Amendments to the U.S. Constitution and Sections 10 & 16, Article 1 of the Ohio Constitution.

[VI]. Appellant was denied a fair trial from the cumulative effect of the numerous constitutional errors throughout his criminal trial proceeding(s), contrary to clearly established constitutional law, in violation of his rights in the 5th, 6th & 14th Amendments to the U.S. Constitution and Sections 10 & 16, Article 1 of the Ohio Constitution.

{¶ 11} At the outset, we note that while his appeal of the judgment denying his postconviction petition was pending, appellant, pro se, filed on April 8, 2021 an App.R. 26(B) application to reopen his direct appeal. In his application, appellant alleged ineffective assistance of appellate counsel for failure to raise assignments of error regarding erroneous jury instructions and ineffective assistance of trial counsel. This court denied appellant's application on September 2, 2021. *State v. Hill*, 10th Dist. No. 19AP-711 (Sept. 2, 2021) (memorandum decision). To the extent arguments presented in his application for reopening raise claims related to those set forth in his postconviction petition, we incorporate pertinent portions of our memorandum decision into our analysis.

{¶ 12} Appellant's six assignments of error are interrelated and will be considered together. Appellant contends the trial court abused its discretion in denying his petition for postconviction relief without a hearing on the six grounds raised in the petition. We disagree.

{¶ 13} "A trial court's decision to deny a postconviction petition without a hearing is reviewed under an abuse of discretion standard." *State v. Boddie*, 10th Dist. No. 12AP-811, 2013-Ohio-3925, ¶ 11, citing *State v. Campbell*, 10th Dist. No. 03AP-147, 2003-Ohio-6305, ¶ 14. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Id.,* citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 14} The R.C. 2953.21 postconviction relief process is a civil collateral attack on a criminal judgment, not an appeal of the judgment. *State v. Davis*, 10th Dist. No. 13AP-98, 2014-Ohio-90, ¶ 17, citing *State v. Calhoun,* 86 Ohio St.3d 279, 281 (1999). Postconviction relief is a means by which the petitioner may present constitutional issues that would otherwise be impossible to review because the evidence supporting those issues is not included in the record of the petitioner's criminal conviction. *State v. Carter*, 10th Dist. No. 13AP-4, 2013-Ohio-4058, ¶ 15, citing *State v. Murphy*, 10th Dist. No. 00AP-233 (Dec. 26, 2000). Postconviction review is not a constitutional right but, rather, is a narrow remedy which affords the petitioner no rights beyond those granted by statute. *Calhoun* at 281. A postconviction relief petition does not provide the petitioner a second opportunity to litigate his or her conviction. *State v. Hessler*, 10th Dist. No. 01AP-1011, 2002-Ohio-3321, ¶ 23, citing *Murphy*.

{¶ 15} A petitioner is not automatically entitled to an evidentiary hearing on a postconviction petition. *State v. Sidebeh*, 10th Dist. No. 12AP-498, 2013-Ohio-2309, ¶ 13, citing *State v. Jackson*, 64 Ohio St.2d 107, 110-13 (1980). To warrant an evidentiary hearing, the petitioner bears the initial burden of providing evidence that demonstrates a cognizable claim of constitutional error. *Campbell*, 10th Dist. No. 03AP-147, 2003-Ohio-6305, ¶ 15, citing R.C. 2953.21; *Hessler* at ¶ 33. The evidence must show that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." *Id.*, citing R.C. 2953.21(A)(1); *Calhoun* at 282-83. "In determining whether to grant a hearing, the trial court must consider the petition, supporting affidavits and other documentary evidence, files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, journal entries, clerk's records and transcripts of proceedings." *State v. Silverman*, 10th Dist. No. 06AP-1278, 2007-Ohio-6498, ¶ 16. A petition may be denied without an evidentiary hearing where the petition, supporting affidavits, documentary evidence, files, and records do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun* at paragraph two of the syllabus. Moreover, before a hearing is warranted, the petitioner must demonstrate that the claimed "errors resulted in prejudice." *Calhoun* at 283. In addition, "[a] petitioner is not entitled to a hearing if his claim for relief is belied by the record and is unsupported by any operative facts other than Defendant's own self-serving affidavit or statements in his petition, which alone are legally insufficient to rebut the record on review." *State v. Blanton*, 4th Dist. No. 19CA096, 2020-Ohio-7018, ¶ 10.

{¶ 16} A trial court may also dismiss a petition for postconviction relief without holding an evidentiary hearing when the claims raised in the petition are barred by the doctrine of res judicata. *Campbell* at ¶ 16, citing *State v. Szefcyk*, 77 Ohio St.3d 93 (1996), syllabus. " 'Res judicata is applicable in all postconviction relief proceedings.' " *Id.*, quoting *Szefcyk* at 95. "Under the doctrine of res judicata, a defendant who was represented by counsel is barred from raising an issue in a petition for post-conviction relief if the defendant raised or could have raised the issue at trial or on direct appeal." *Id.*, citing *Szefcyyk* at syllabus. To avoid dismissal of the petition under the doctrine of res judicata, the evidence supporting the claim must be competent, relevant, and material evidence,

outside the trial court record, and it must not be evidence that existed or was available for use at the time of trial. *State v. Wright*, 10th Dist. No. 08AP-1095, 2009-Ohio-4651, ¶ 11, citing *State v. Cole*, 2 Ohio St.3d 112 (1982), syllabus. Res judicata thus " 'implicitly bars a petitioner from "repackaging" evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal.' " *State v. Cochran*, 10th Dist. No. 12AP-73, 2012-Ohio-4077, ¶ 11, quoting *Hessler* at ¶ 27.

{¶ 17} The first, fourth, and fifth grounds for relief advanced by appellant alleged ineffective assistance of trial counsel. To secure a hearing on his claim for postconviction relief based on ineffective assistance of trial counsel, appellant had the burden of submitting evidentiary documents containing sufficient operative facts which, if believed, would establish that (1) trial counsel substantially violated at least one of counsel's essential duties to appellant, and (2) appellant suffered prejudice as a result. *Sidebeh*, 10th Dist. No. 12AP-498, 2013-Ohio-2309, ¶ 15, citing *Cole* at 114. " 'Judicial scrutiny of counsel's performance must be highly deferential * * * [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Id.*, quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 143-44 (1989). Further, "[w]here new counsel represents a defendant on direct appeal and the ineffectiveness of trial counsel could have been determined without resort to evidence outside the record, a petition for postconviction relief * * * is barred by res judicata." *State v. Ibrahim*, 10th Dist. No. 14AP-355, 2014-Ohio-5307, ¶ 11, citing *Cole* at 114.

{¶ 18} Appellant first claimed that trial counsel was ineffective in failing to subpoena his expert medical witness, Dr. Adam Kennah, to testify about a report he issued opining as to the cause and severity of Jacobs' injuries. Appellant argued that had trial counsel presented Dr. Kennah's report and testimony at trial, the jury would have concluded that Jacobs lied about being struck in the face with a sledgehammer and exaggerated the extent of his injuries.

{¶ 19} Appellant supported his claim with his April 8, 2020 affidavit in which he detailed the circumstances involved in preparing his defense. Specifically, appellant averred that his original trial counsel obtained funding to secure Dr. Kennah's appearance at trial. However, after original counsel withdrew from the case, succeeding counsel did

not subpoena Dr. Kennah despite having had discussions with appellant about the importance of Dr. Kennah's testimony to his defense. Appellant further asserted that trial counsel did not inform him of the decision not to subpoena Dr. Kennah until after the prosecution rested its case. (Ex. K, May 19, 2020 Petition for Postconviction Relief.)

{¶ 20} Appellant did not present an affidavit from his trial counsel to corroborate the claims asserted in appellant's affidavit. Nor did appellant provide an affidavit from trial counsel or any non-interested party with personal knowledge of the steps trial counsel took in preparing appellant's case for trial. The lack of affidavit testimony is significant because there is no evidence indicating why trial counsel chose not to secure Dr. Kennah's testimony. *See Ibrahim* at ¶ 19, citing *State v. Messer-Tomack*, 10th Dist. No. 10AP-847, 2011-Ohio-3700, ¶ 14-15; *see also Silverman*, 10th Dist. No. 06AP-1278, 2007-Ohio-6498, ¶ 27 (concluding there was no merit to petitioner's claim that trial counsel failed to effectively investigate or prepare the case for trial where "the record [did] not include an affidavit from trial counsel, the investigator, or any other non-interested party with personal knowledge of what steps trial counsel took in preparing appellant's case for trial").

{¶ 21} In addition to his affidavit, appellant also attached a photocopy of an unsigned April 21, 2019 letter purportedly written by Dr. Kennah setting forth his review of Jacobs' medical records and his assessment of Jacobs' injuries. Dr. Kennah noted that the medical records revealed "a laceration to [Jacobs'] left upper eyelid, bruising and deformity to his nose, and bruising to both orbits. A CT of his facial bones demonstrated multiple bilateral facial bone fractures." Dr. Kennah opined that the injuries suffered by Jacobs "are not necessarily indicative of an assault with a weapon. Similar injuries could be expected if he was struck multiple times with a bare fist and/or kicked with a shoe or boot." Dr. Kennah further averred that Jacobs' multiple facial fractures indicated that "a certain amount of force was applied" and that "repeated strikes with a fist or feet could have created the injury pattern observed in Mr. Jacobs." Dr. Kennah concluded "within a reasonable degree of medical and scientific certainty that the injuries sustained by Mr. Jacobs did not necessarily had to have come from a blunt weapon, but could have come from punches or kicks." (Ex. A, Petition.)

{¶ 22} Appellant also attached a photocopy of an October 17, 2019 letter he received from trial counsel averring that counsel supplied appellant with "the non 'counsel-only'

materials in your file," including the report from Dr. Kennah. (Ex. B, Petition.) In addition, appellant attached a photocopy of an October 14, 2019 letter he wrote to Dr. Kennah requesting that he provide an affidavit addressing the following four issues: (1) "[t]hat no weapon caused the injuries, and cause of the injuries"; (2) "[t]he extent of the injuries, including the location(s)"; (3) "[w]hether a brain stem injury was documented and the expected results of brain stem trauma"; and (4) "[w]hether the ear/eyes infection on August 21, 2019 were caused from the injuries sustained on August 25, 2018." (Ex. N, Petition.) The materials attached to appellant's petition do not include an affidavit from Dr. Kennah.

{¶ 23} Appellant could have raised trial counsel's alleged ineffectiveness for failing to secure Dr. Kennah's appearance at trial in the direct appeal of his conviction. Because he could have done so, even though he did not, res judicata barred his claim. *See, e.g., State v. Banks*, 10th Dist. No. 08AP-722, 2009-Ohio-1667, ¶ 14 (regardless of whether counsel's failure to call the detective was a matter of trial strategy, the fact that the detective was not called was known at the time of appellant's direct appeal). In addition, appellant has not overcome the presumption that counsel's decision not to subpoena Dr. Kennah was reasonable trial strategy. It is well-settled that "[c]ounsel's decision to call a witness is a matter of trial strategy * * * [and] [s]uch decisions will generally not be second-guessed by a reviewing court." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 113; *Hessler* at ¶ 42. Moreover, appellant has failed to prove " 'that the witness' testimony would have significantly assisted the defense and would have affected the outcome of the case.' " *State v. Pilgrim*, 184 Ohio App.3d 675, 698 (10th Dist.2009), quoting *State v. Dennis*, 10th Dist. No. 04AP-595, 2005-Ohio-1530, ¶ 22.

{¶ 24} Putting aside the state's reservations about whether the unsigned letter from Dr. Kennah constitutes an expert medical report, the statements contained therein do not, as appellant argues, definitively establish that Jacobs lied about being struck in the face with a sledgehammer. Indeed, Dr. Kennah states that Jacobs' injuries "are not *necessarily* indicative of an assault with a weapon" and "did not *necessarily* had to have come from a blunt object." (Ex. A, Petition.) Moreover, Dr. Kennah merely opines that fists *could* have been used to cause the damage to Jacobs' face. Thus, Dr. Kennah's report does not foreclose the possibility that a sledgehammer could have been used in the assault.

{¶ 25} Nor does Dr. Kennah's report support appellant's contention that Jacobs exaggerated the extent of his injuries. Dr. Kennah's report corroborates both Jacobs' testimony and the medical records evidencing the severity of Jacobs' injuries. Indeed, Dr. Kennah details Jacobs' injuries, including his "multiple bilateral facial bone fractures" and indicates that such injuries could have resulted from being repeatedly struck in the face by a fist. Given appellant's admission that he punched Jacobs in the face four times with his closed fist, coupled with his claim that he could not have caused the damage to Jacobs' face using only his fist, trial counsel would not have wanted Dr. Kennah to testify. Because appellant stipulated that Jacobs sustained serious physical injuries,[7] any testimony from Dr. Kennah about the severity of Jacobs' injuries would have drawn more attention to that fact, regardless of whether the injuries were caused by a sledgehammer or a fist. Thus, appellant has failed to establish that trial counsel was ineffective in choosing not to call Dr. Kennah as a witness.

{¶ 26} Appellant next claimed that trial counsel was ineffective in failing to subpoena Amy Slaven, an investigator with the Franklin County Public Defender's Office. Appellant argued that "Slaven's testimony would show Jacobs' predatory character and attack his credibility" and that "[h]ad Slaven been subpoenaed to testify it is a reasonable probability that it would have shown the jury that Jacobs was sexually predatory towards Brittany and giving false testimony against Hill." (Petition at 19).

{¶ 27} In support, appellant referenced his own affidavit attesting to his discussion with trial counsel regarding the importance of Slaven's testimony and counsel's failure to advise appellant of his decision not to call Slaven until after the prosecution rested its case. (Ex. K). Appellant did not present an affidavit from his trial counsel to corroborate these statements, nor did he provide an affidavit from trial counsel or any non-interested party with personal knowledge of the steps trial counsel took in preparing appellant's case for trial. The lack of affidavit testimony on this issue is significant because there is no evidence

---

[7] "Serious physical harm" to the victim is an element of the crime of felonious assault under R.C. 2903.11(A)(1). As relevant here, "serious physical harm" is defined as any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; or any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain. R.C 2901.01(A)(5)(c) through (e).

indicating why trial counsel chose not to secure Slaven's testimony. *Ibrahim*, 10th Dist. No. 14AP-355, 2014-Ohio-5307; *Silverman*, 10th Dist. No. 06AP-1278, 2007-Ohio-6498.

{¶ 28} Appellant also attached a photocopy of an unsigned "Interview Summary" purportedly prepared by Slaven after she interviewed Jacobs on November 20, 2018. (Ex. M, Petition.) In that summary, Slaven stated that Jacobs reported that appellant entered his bedroom while he was asleep and struck him with a weapon he believed to be a two-pound sledgehammer. Appellant also attached a photocopy of his October 21, 2019 letter to Slaven requesting that she provide an affidavit attesting to various aspects of her interview of Jacobs, including "[t]he conversations you had with Jacobs regarding Brittany Hamm, including the phone call where he asked to change his answer to your question pertaining to this relationship" (Ex. O), and a photocopy of an undated letter from Slaven declining that request. (Ex. P).

{¶ 29} The fact that Slaven was not called to testify was known at the time of appellant's direct appeal and could have been raised at that point. As such, the claim is barred by res judicata. *Banks*, 10th Dist. No. 08AP-722, 2009-Ohio-1667, ¶ 14. Furthermore, the materials attached to appellant's petition do not support his claim. Slaven's "Informational Summary" states only that Brittany had been "elusive" for several years, was "sporadically" at the house, and was not in Jacobs' bedroom at the time of the assault. (Ex. M, Petition.) The summary contains no statements about any relationship between Jacobs and Brittany, sexual or otherwise. Further, to the extent appellant may have sought Slaven's testimony to advance his argument that Jacobs "was sexually predatory towards Brittany," Slaven declined appellant's request to provide an affidavit. (Ex. O, P, Petition.) Thus, appellant has not overcome the presumption that trial counsel's decision not to procure Slaven's testimony was reasonable trial strategy.

{¶ 30} Moreover, appellant has not established that he was prejudiced by trial counsel's failure to subpoena Slaven. Trial counsel thoroughly explored Jacobs' alleged predatory behavior toward Brittany in an effort to undermine his credibility. In opening statement, trial counsel asserted that Jacobs' testimony was incredible based, in part, on the predatory nature of his relationship with Brittany. (Tr. at 27-28, 31-32.) Further, on cross-examination, trial counsel questioned Jacobs about his alleged sexual advances toward Brittany. The jury heard the pertinent testimony and was able to assess Jacobs'

credibility on that specific issue as well as his general credibility. Thus, appellant has failed to demonstrate that trial counsel was ineffective in failing to call Slaven as a witness.

{¶ 31} Appellant also alleged that trial counsel was ineffective in agreeing to amend the indictment. The indictment charged appellant with felonious assault under two alternative subdivisions of R.C. 2903.11.[8] Indeed, the indictment alleged that appellant "did knowingly cause serious physical harm to Mart[ie] Jacobs and/or did knowingly cause or attempt to cause physical harm to Mart[ie] Jacobs by means of a deadly weapon or dangerous ordnance, to wit: a sledgehammer." R.C. 2903.11(A)(1) and (2). (Oct. 18, 2018 Indictment at 2.)

{¶ 32} During a break in voir dire on the first day of trial, the prosecution moved to amend the indictment pursuant to Crim.R. 7(D) to delete the language charging appellant with felonious assault by means of a deadly weapon, i.e., a sledgehammer. Defense counsel agreed to the amendment.[9] Thus, the indictment, as amended, charged appellant with felonious assault by knowingly causing serious physical harm to Jacobs.

{¶ 33} In his petition, appellant argued that "[e]very other charging instrument * * * in this case has contained the specific accusation that Jacobs was injured by being hit in the face with a sledgehammer." (Petition at 20.) In support of this assertion, appellant attached photocopies of Columbus Police Department ("CPD") documentation (Ex. C—affidavit in support of probable cause; Ex. E—original complaint filed in the Franklin County Municipal Court; and Ex. F—court arraignment sheet, Petition), as well as the bill of particulars. (Ex. G, Petition.) Appellant also argued that Dr. Kennah's report demonstrated that Jacobs' injuries were not caused by a sledgehammer but by several fist-punches and that Jacobs had consistently testified appellant struck him with a sledgehammer. Appellant maintained that "[d]efense counsel's compliance with the amendment to the indictment did not represent sound trial strategy beneficial to Hill's defense." (Petition at 23.)

---

[8] As appellant was found not guilty of aggravated burglary, we need not discuss the indictment regarding that charge.

[9] Because the trial transcript prepared for appellant's direct appeal did not include voir dire or the discussion of the amendment, the trial court ordered the court reporter to prepare and file the relevant portions of the transcript.

{¶ 34} Appellant could have raised counsel's alleged ineffectiveness concerning amendment of the indictment in his direct appeal. Because he could have done so, even if he did not, res judicata bars his claim. *See State v. Harris*, 10th Dist. No. 07AP-972, 2018-Ohio-2837, ¶ 12. Further, in our memorandum decision denying appellant's application to reopen his direct appeal, we addressed a related argument—that the amendment to the indictment should have barred the prosecution from presenting Jacobs' testimony as to how his serious injuries occurred, or at least required the trial court to provide the jury a limiting instruction that it was not to consider the use of a sledgehammer or any other weapon in reaching a verdict. *Hill*, 10th Dist. No. 19AP-711 (Sept. 2, 2021) (memorandum decision), at ¶ 11.

{¶ 35} Rejecting that argument, we stated:

> When the case was indicted, both Counts 1 and 2 alleged that Hill committed the offenses with a sledgehammer. (Oct. 18, 2018 Indictment.) The indictment was amended to eliminate the specific reference to the use of a sledgehammer, and the jury charge included no reference to a dangerous weapon or ordnance. (Final Jury Charge at 6.) Thus, because the state indicted Hill in the alternative—i.e., the indictment still alleged that a felonious assault was committed by causing serious physical harm to the victim—the amendment simplified the case by removing one way the state might have tried to prove guilt: committing felonious assault through the use of a deadly weapon—specifically in this case, a sledgehammer. *See* R.C. 2903.11(A)(1) and (2). Furthermore, because Hill's primary defense was premised on a claim of self-defense, removing the reference to the sledgehammer from the indictment and removing the alternative means for the state to prove guilt also helped the defense as it permitted counsel to have the jury hone in on whether striking the victim with fists was done knowingly under the circumstances.
>
> The victim's testimony that he believed he was struck with a sledgehammer was properly presented to the jury, leaving the defense to challenge that testimony as an issue of credibility. Defense counsel thoroughly did so on cross-examination. (Tr. Vol. II at 74.) When Hill testified, he denied having used a sledgehammer. *Id.* at 90-91. As we stated in our decision resolving the direct appeal, "the jury was not obligated to accept Hill's testimony as truthful, and instead was entirely free to resolve the inconsistent testimony concerning the details of the assault in favor of believing the victim." (Citations

omitted.)  *Hill* at ¶ 34. Whether Hill used a sledgehammer or his fists, the jury was free to reject Hill's claim of self-defense and instead find that Hill knowingly caused the victim serious physical harm.  Hill's continued complaints that the jury chose to believe the victim rather than appellant is simply a rehashing of the argument made on direct appeal and does not provide a basis for a claim of ineffective assistance of appellate counsel for failing to object to the actions or inactions of trial counsel on this point.

*Id.* at ¶ 12-13.

{¶ 36} The same analysis applies to appellant's claim regarding trial counsel's alleged ineffectiveness in agreeing to amend the indictment to eliminate the reference to the sledgehammer.  Crim.R. 7(D) provides that an indictment may be amended at any time before, during, or after a trial provided no change was made in the name or identity of the crime charged.  Amending the indictment to delete the language charging appellant with felonious assault by means of a deadly weapon, i.e., a sledgehammer, did not change the name or identity of the crime charged.  Further, minimizing references to a sledgehammer helped the defense, as it permitted counsel to focus the jury on whether striking Jacobs with his fists was done knowingly under the circumstances.  Moreover, it would have been far more difficult for appellant to argue self-defense had he struck Jacobs with a sledgehammer rather than just his fists.  Thus, appellant has failed to demonstrate that trial counsel was ineffective in agreeing to the amendment of the indictment.

{¶ 37}  In the final analysis, the trial court properly concluded appellant's petition failed to produce evidence that trial counsel was ineffective or that, even if counsel were ineffective, appellant suffered prejudice as a result.  Thus, the trial court did not abuse its discretion in failing to hold a hearing on appellant's first, fourth, and fifth grounds for relief.

{¶ 38}  Appellant's first, fourth, and fifth assignments of error are overruled.

{¶ 39}  Appellant's second ground for relief alleged that the state violated his due process rights by knowingly presenting false testimony at trial.  Appellant supported this ground with the aforementioned CPD documentation chronicling Jacobs' statements that appellant struck him in the face with a sledgehammer and Jacobs' concomitant trial testimony.  Appellant argued that Dr. Kennah's report established that Jacobs lied about being hit with a sledgehammer and exaggerated the severity of his injuries.  Appellant maintained that pursuant to trial counsel's duty under Crim.R 16(H) to provide the

prosecution with Dr. Kennah's report, the prosecution was made aware of Jacobs' false assertions and improperly solicited such testimony at trial. Appellant maintained that had the prosecution not induced Jacobs' false testimony about the cause and effect of his injuries, there existed a reasonable probability that the jury would not have rendered a guilty verdict.

{¶ 40} " 'The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *Columbus v. Joyce*, 10th Dist. No. 00AP-1486 (Nov. 29, 2001), quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989). " 'The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.' " *Id.*, quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To establish a denial of due process from the use of false testimony or false evidence, the defendant must show: (1) the statement was false; (2) the statement was material; and (3) the prosecutor knew it was false. *State v. Howard*, 10th Dist. No. 15AP-161, 2016-Ohio-504, ¶ 40, citing *State v. Young*, 10th Dist. No. 05AP-641, 2006-Ohio-1165, ¶ 29, citing *Joyce.* The burden is on the defendant to demonstrate that the testimony was perjured. *Joyce.*

{¶ 41} We have already determined that Dr. Kennah's report does not definitively establish that Jacobs lied about being struck in the face with a sledgehammer. Appellant offered no evidence other than the arguments in his petition and his own self-serving affidavit recounting his trial testimony to counter Jacobs' testimony. Thus, appellant has failed to demonstrate that Jacobs' statement was false. Further, following amendment of the indictment, Jacobs' testimony regarding the sledgehammer was no longer material, as the indictment no longer charged appellant with felonious assault by means of a deadly weapon. Moreover, appellant is unable to demonstrate any knowledge on the part of the prosecution that Jacobs' testimony was false. Appellant did not provide an affidavit from the prosecution or any non-interested party with knowledge of the steps the prosecution took in preparing the case against appellant, including discussions with Jacobs. "Evidence of perjury, without proof of knowledge on the part of the prosecution, does not implicate constitutional rights and thus does not support a petition for postconviction relief." *Boddie*, 10th Dist. No. 12AP-811, 2013-Ohio-3925, ¶ 13, citing *State v. Jones*, 10th Dist. No. 06AP-62, 2006-Ohio-5953, ¶ 25.

{¶ 42} In addition, as we discussed in our previous decisions resolving appellant's direct appeal and his application to reopen his direct appeal, Jacobs' testimony that he believed he was struck with a sledgehammer was presented to the jury and his credibility on that issue was challenged on cross-examination. The jury also heard appellant's testimony denying that he used a sledgehammer. The jury was free to resolve the inconsistent testimony regarding use of a sledgehammer in favor of the prosecution. Whether appellant used a sledgehammer or his fists, the jury could reject his self-defense claim and instead find that he knowingly caused serious physical harm to Jacobs. Appellant's continued complaint that the jury chose to believe Jacobs' testimony rather than his testimony does not provide a basis for a claim of constitutional error. Thus, the trial court did not abuse its discretion in failing to hold a hearing on appellant's second ground for relief.

{¶ 43} Appellant's second assignment of error is overruled.

{¶ 44} Appellant's third ground for relief asserted that the trial court violated his due process rights by relying on materially false and misleading information in its sentencing determination. Because appellant's sentencing claims are based upon matters contained in the record, he could have raised them on direct appeal. Accordingly, they are barred by res judicata. *Banks*, 10th Dist. No. 08AP-722, 2009-Ohio-1667, ¶ 14*; Harris*, 10th Dist. No. 07AP-972, 2018-Ohio-2837, ¶ 12.

{¶ 45} Further, appellant's reliance on *State v. Joseph*, 10th Dist. No. 13AP-752, 2014-Ohio-2733 is misplaced. In *Joseph,* we stated that there "is 'a clearly established federal due process protection against a trial court's reliance on materially false information at sentencing.' " *Id.* at ¶ 15, quoting *Stewart v. Erwin*, 503 F.3d 488 (6th Cir.2007). However, we further noted that " '[i]n order to establish such a due process violation based on the use of false information in sentencing, [the defendant] must show that the information in question was materially false and that the trial court relied on it.' " *Id.* at ¶ 16, quoting *State v. Smith*, 2d Dist. No. 21463, 2008-Ohio-6330, ¶ 66.

{¶ 46} As discussed previously, appellant has failed to demonstrate that Jacobs' testimony about being struck by a sledgehammer was false. Further, appellant has failed to demonstrate that the trial court relied on Jacobs' alleged perjured testimony about the sledgehammer in fashioning its sentence. Appellant acknowledged as much when stating

"[t]he trial judge seems to have found Jacobs' sledgehammer claim to be false because he concludes that Hill's fists caused the injury to Jacobs." (Petition at 15.)[10]

{¶ 47} Appellant also asserted that the trial court was "influenced" by misleading statements regarding Jacobs' pre-existing physical disabilities and the severity of the injuries he suffered in the assault. Appellant argued that Jacobs' trial testimony regarding these issues was either internally inconsistent, uncorroborated and/or inconsistent with the medical evidence. Appellant further argued that the trial court "offer[ed] his personal belief that Jacobs suffered psychological harm and the appearance of permanent disfigurement" and that "[n]othing in the record supports that Jacobs suffered psychologically." (Petition at 15, 16.)

{¶ 48} The same judge presided over appellant's trial and sentencing hearing. As such, the trial court heard Jacobs' testimony regarding his physical condition preceding the assault and the severity of the injuries he suffered as a result of the assault. The court also observed Jacobs and was able to assess his physical condition, including the permanent disfigurement of his face. Further, the court could take into account any inconsistencies between the medical records and Jacobs' testimony. The court also heard appellant's testimony regarding the damage he could inflict with his fists and observed first-hand the size disparity between appellant and Jacobs.

{¶ 49} As to appellant's claim that the record does not support the trial court's "personal belief" that Jacobs suffered psychological harm as a result of the assault, we note that appellant points to no evidence to support his bald assertion. Further, the court noted Jacobs' pre-assault physical disabilities, his post-assault 12-hour surgery, and the permanent disfigurement of his face resulting from the assault. Based on these observations, the trial court reasonably could conclude that the serious physical injuries Jacobs suffered in the assault resulted in psychological harm.

{¶ 50} For these reasons, we conclude that the trial court did not abuse its discretion in failing to hold a hearing on appellant's third ground for relief.

---

[10] Contrary to appellant's assertion, the sentencing hearing transcript does not definitively establish that the trial court "found Jacobs' sledgehammer testimony to be false." To be sure, the trial court's remarks focused on appellant's use of his fists during the assault. However, that focus undoubtedly was based on the deletion of the sledgehammer reference in the amended indictment, rather than a finding that Jacobs lied about being struck by a sledgehammer.

{¶ 51} The third assignment of error is overruled.

{¶ 52} Appellant's sixth ground for relief argued that the cumulative effect of the constitutional errors raised in his first through fifth grounds for relief denied him a fair trial, thus warranting an evidentiary hearing. Pursuant to the doctrine of cumulative error, a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors individually do not rise to the level of prejudicial error. *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). However, "there must be a showing of multiple errors to cumulate, and '[w]here no individual, prejudicial error has been shown, there can be no cumulative error.' " *State v. Mendoza*, 10th Dist. No. 16AP-893, 2017-Ohio-8977, ¶ 86, quoting *State v. Jones*, 2d Dist. No. 20349, 2005-Ohio-1208, ¶ 66. " 'If a reviewing court finds no prior instances of error, then the cumulative error doctrine does not apply.' " *State v. Blanton*, 4th Dist. No. 19CA1096, 2020-Ohio-7018, ¶ 17, quoting *State v. Chafin*, 4th Dist. No. 16CA3769, 2017-Ohio-7622, ¶ 56. Because we have concluded that appellant failed to set forth operative facts demonstrating constitutional error on any of the grounds for relief asserted in his petition, the trial court did not abuse its discretion in failing to hold an evidentiary hearing on appellant's claim of cumulative error raised in his sixth ground for relief. *Mendoza* at ¶ 32, 55.

{¶ 53} Appellant's sixth assignment of error is overruled.

{¶ 54} Having overruled appellant's six assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER and JAMISON, JJ., concur.