[Cite as *State v. Bethel*, 2020-Ohio-1343.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-324 |
| v. | : | (C.P.C. No. 00CR-6600) |
| Robert W. Bethel, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 7, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

**On brief:** *Timothy Young*, Ohio Public Defender, *Rachel Troutman*, and *Alison Swain*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Robert W. Bethel appeals the decision of the Franklin County Common Pleas Court denying his motion for leave to file motion for new trial and his petition for postconviction relief, which were filed on September 10, 2018 and based upon allegedly newly discovered and exculpatory evidence. The trial court denied the motion and denied the petition without a hearing.

{¶ 2} On June 25, 1996, James Reynolds and his girlfriend Shannon Hawks were shot to death. Bethel was convicted for the aggravated murders of Reynolds and Hawks and sentenced to death. Bethel's conviction and sentence were affirmed by the Supreme Court of Ohio. *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853 ("*Bethel I*").

No. 19AP-324

{¶ 3} The facts surrounding the homicides of Reynolds and Hawks are convoluted and involve several people—notably Bethel, his friend and co-defendant Jeremy Chavis, Bethel and Chavis' friend Tyrone Green, and Chavis' cousin Donald Langbein. The evidence presented by the state at trial indicated all were engaged in gang activity, and Bethel, Chavis, Green, and Langbein were all members of "the Crips." Bethel also lived with Chavis and Langbein. *Id.* at ¶ 1-3.

{¶ 4} At some point in 1995, Reynolds and Green were involved in a burglary, and during that burglary Green shot a man to death. Reynolds told a man named Pryor he had seen Green kill the victim, and Pryor informed the police. *Id.* at ¶ 4. Green was indicted, and during discovery Green's attorney was provided with a document stating Reynolds had told Pryor he had seen the shooting, and Pryor had informed the police. *Id.* at ¶ 5. This apparently formed the basis of the motive for Reynolds' murder. *Id.* at ¶ 6.

{¶ 5} At Bethel's trial, Langbein admitted he and Bethel had discussed "tak[ing] steps to get rid of" the witnesses against Green. *Id.* Langbein's testimony and the other evidence presented placed the blame for the shootings of Reynolds and Hawks on Bethel and Chavis.

{¶ 6} The police executed a search warrant at the trailer where Bethel, Chavis, and Langbein lived in January 1997, but the investigation remained stagnant for four years, until Bethel's arrest on November 6, 2000. *Id.* at ¶ 24. The turning point came when Langbein was arrested for unrelated federal firearms violations and informed police and ATF agents he had information about the murders of Reynolds and Hawks. Langbein agreed to wear a wire in discussions with Bethel, but he was unable to obtain any incriminating statements. *Id.* at ¶ 19-24.

{¶ 7} On August 30, 2001, the day before his scheduled trial, Bethel executed an off-the-record proffer in which he detailed his responsibility and participation in the murders of Reynolds and Hawks, and entered into an agreement to "to plead to two counts of aggravated murder with firearm specifications." *Id.* at ¶ 29, 32. He further agreed to cooperate with the investigation and to testify truthfully against Jeremy Chavis and anyone else involved in killing Reynolds and Hawks. In return, plaintiff-appellee, State of Ohio, agreed to dismiss the death specifications. *Id.* at ¶ 34. The agreement contained a specific provision dealing with Bethel's proffer, and stated Bethel and the state "agree that the

proffer taken of the defendant on August 30, 2001 will be admissible in a criminal trial against the defendant in the event that the defendant does not abide by the terms and conditions of this agreement set forth below." *Id.* at ¶ 36. The agreement also included a provision nullifying the agreement and permitting automatic reinstatement of the original charges if Bethel did not "cooperate fully" or "refused to testify * * * in any proceeding." *Id.* at ¶ 38. The terms of the agreement were then placed in the court record at a hearing, Bethel confirmed he understood them, and the trial court accepted the agreement. The trial court then accepted Bethel's plea of guilty to two counts of aggravated murder with gun specifications. *Id.* at ¶ 39.

{¶ 8} On November 13, 2001, Bethel refused to testify against Chavis. *Id.* at ¶ 40. Based on that refusal, the trial court granted the state's motion to void the plea agreement and reinstated the original charges and death specifications. Bethel attempted to have his proffer suppressed and to have his plea agreement enforced, based on the argument he had never intended to testify against Chavis and had been misled by his original counsel, but both attempts failed. *Id.* at ¶ 41. During his subsequent trial, Donald Langbein testified he and Bethel had discussed "tak[ing] steps to get rid of" the witnesses against Green. *Id.* at ¶ 6. The state was also permitted to play portions of one of the taped conversations between Bethel and Langbein, and to admit Bethel's proffered statement admitting he participated in the murders of Hawks and Reynolds. *Id.* at ¶ 96.

{¶ 9} Bethel was convicted and sentenced to death, largely on the strength of his proffer and the testimony of Langbein, as well as that of two other witnesses to whom he had made incriminating statements. The conviction and sentence were appealed and affirmed, and a subsequent application to reopen the appeal was denied without opinion. *State v. Bethel*, 114 Ohio St.3d 1503, 2007-Ohio-4285. Bethel also filed a timely postconviction petition in the trial court, asserting 23 grounds for relief. All were rejected, the petition was dismissed, and this court subsequently affirmed the dismissal of that petition. *State v. Bethel*, 10th Dist. No. 07AP-810, 2008-Ohio-2697 ("*Bethel II*").

{¶ 10} In 2008, Bethel filed a motion for new trial, based on an ATF report entitled "CHAVIS, Jeremy" that had recently been discovered in the custody of the Columbus Police Department. In the report, an ATF agent states he was contacted by Shannon Williams, an inmate at the Franklin County Jail, who stated his fellow inmate Langbein had told him

No. 19AP-324

"  'he was involved in a homicide with an individual who is now incarcerated at the Federal Penn., Ashland, KY, where the victim was shot seventeen times' " and " 'the other individual who was arrested was the driver following the homicide.' " *State v. Bethel*, 10th Dist. No. 09AP-924, 2010-Ohio-3837, ¶ 10 ("*Bethel III*").  Chavis was incarcerated in the federal prison in Kentucky at this time, and Bethel's motion argued Williams' statement was essentially a "confession" Langbein, rather than Bethel, had committed the murders with Chavis.  *Id*.  The trial court denied that motion, and concluded the report was not "direct, substantive evidence" of Bethel's innocence and did not negate the statements Bethel made in his proffer.  (Sept. 3, 2009 Decision at 8.)  This court affirmed, *Bethel III* at ¶ 25, and the Supreme Court did not accept jurisdiction over his appeal of this court's decision.  *State v. Bethel*, 132 Ohio St.3d 1513, 2012-Ohio-4021.

{¶ 11}  Bethel has now discovered another document allegedly implicating Langbein and, as a result, has filed the motions and petition that are now before this court.  The alleged new document "Summary 86" describes a May 17, 2001 interview by Columbus Police Department Homicide Detective Ed Kallay (who testified at Bethel's trial), two federal ATF officers, and a Franklin County Jail inmate named Ronald Withers.  The "Firm or Victim[s]" named in the summary are the homicide victims Hawks and Reynolds, and the "place of occurrence" named is the location where the bodies of Hawks and Reynolds were discovered.  During the interview, Withers claims he was in the same cell as Chavis for three weeks, and reported Chavis told him "when he shot the individual he was already dead[,] * * * that his cousin was the other shooter, and his cousin was also incarcerated." (Attachment to Sept. 10, 2018 Mot. at 16.)  As noted above, Chavis' cousin is Langbein, not Bethel, and Bethel contends Summary 86 constitutes additional proof Langbein and Chavis killed Hawks and Reynolds, not Bethel and Chavis.

{¶ 12}  After discovering Summary 86, Bethel's attorneys located Withers, who executed an affidavit confirming his statements in the document.  Bethel also obtained an affidavit from his original trial counsel stating in part the "written reports implicate Donald Langbein and Jeremy Chavis as the principal offenders in the two murders Bethel was charged with * * *.  Had these reports and phone calls been turned over, I would not have allowed the plea deal and the proffer to have taken place as they happened," and "[h]ad I

No. 19AP-324

known about these reports prior to trial, I would not have allowed Bethel to give a proffer and be debriefed in the manner he was." (Ex. E, Sept. 10, 2018 Mot.)

{¶ 13} The trial court held "these applications for relief are untimely and procedurally defaulted * * * [and] no colorable constitutional violation has been shown under *Brady* and its progeny, including *Turner v. United States*, 582 U.S. ___, 137 S.Ct. 1885, 198 L.Ed.2d 443 (2017)." (Apr. 15, 2019 Decision at 2.) The trial court discounted the affidavits of Bethel's original trial counsel by noting "importantly, neither lawyer states that they were unaware of the *substance* suggested by Summary 86," and "no prejudice to Bethel is apparent from his claimed lack of access to Summary 86." (Apr. 15 2019 Decision at 7, 9.) The trial court observed "[w]here someone like Chavis is in a group or circle of people who might reasonably have been interviewed by defense counsel prior to trial, there can hardly be clear and convincing evidence that a defendant was unavoidably prevented from learning what such persons might say." (Apr. 15, 2019 Decision at 10.)

{¶ 14} In accordance with these conclusions, the trial court denied Bethel's successive postconviction petition and motion for leave to file a motion for new trial. Bethel has now appealed these rulings, and argues in his two assignments of error the court abused its discretion in finding he was not unavoidably prevented from discovering the evidence that forms the basis of his motions and the evidence did not establish a reasonable likelihood of a different result at trial.

## I. Petition for Postconviction Relief

{¶ 15} R.C. 2953.21(A)(1)(a) authorizes "any person who has been convicted of a criminal offense and sentenced to death and who claims that there was a denial or infringement of the person's rights under either of those Constitutions that creates a reasonable probability of an altered verdict * * * [to] file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." We have observed "[a] petition for postconviction relief is a collateral civil attack on a criminal judgment, not an appeal of the judgment." *State v. Sidibeh*, 10th Dist. No. 12AP-498, 2013-Ohio-2309, ¶ 8, citing *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994). Postconviction relief " 'is a means to reach constitutional issues which would otherwise be impossible to reach because the

evidence supporting those issues is not contained in the record.' " *Sidibeh* at ¶ 8, quoting *State v. Murphy*, 10th Dist. No. 00AP-233, (Dec. 26, 2000).

{¶ 16} The doctrine of res judicata places a significant restriction on the availability of postconviction relief, since it bars a convicted defendant from presenting " 'any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial*, which resulted in that judgment of conviction, *or on an appeal* from that judgment.' " *State v. Cole*, 2 Ohio St.3d 112, 113 (1982), quoting *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus. We have also observed res judicata "implicitly bars a petitioner from 're-packaging' evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal." *State v. Hessler*, 10th Dist. No. 01AP-1011, 2002-Ohio-3321, ¶ 27. Moreover, a petitioner is not automatically entitled to an evidentiary hearing on a postconviction petition. *Sidibeh* at ¶ 13, citing *State v. Jackson*, 64 Ohio St.2d 107, 110-13 (1980). To warrant an evidentiary hearing, the petitioner must at the outset provide evidence demonstrating a cognizable claim of constitutional error. *See Sidibeh* at ¶ 13, citing R.C. 2953.21(C). *See also Hessler* at ¶ 24. A trial court may deny a postconviction petition without an evidentiary hearing "if the petition, supporting affidavits, documentary evidence, and trial record do not demonstrate sufficient operative facts to establish substantive grounds for relief." *Sidibeh* at ¶ 13, citing *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph two of the syllabus.

{¶ 17} This court reviews a trial court's decision denying a postconviction petition without a hearing for an abuse of discretion. *See, e.g., State v. Howard*, 10th Dist. No. 15AP-161, 2016-Ohio-504, ¶ 15-21 (citing and quoting cases). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Further, "a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence." *Sidibeh* at ¶ 7, quoting *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio- 6679, ¶ 58.

{¶ 18} Because Bethel's current petition of postconviction relief is both a successive petition, *see Bethel II,* 2008-Ohio-2697, and a late petition, *see* R.C. 2953.21(A)(2) (providing that to be timely a postconviction petition must be filed "no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of

No. 19AP-324

appeals in the direct appeal of the judgment of conviction or adjudication"), he must surmount a jurisdictional hurdle before the court can consider the merits of the petition. Pursuant to R.C. 2953.21, a trial court may not entertain an untimely postconviction petition unless the petitioner initially demonstrates either: (1) he was unavoidably prevented from discovering the facts necessary for the claim for relief, or (2) the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation. R.C. 2953.23(A)(1)(a). If the petitioner can satisfy one of those two conditions, he must then demonstrate but for the constitutional error at trial, no reasonable finder of fact would have found him guilty. R.C. 2953.23(A)(1)(b).

## II. Motion for Leave to File Motion for New Trial and Motion for New Trial

{¶ 19} Pursuant to Crim.R. 33(B), "[m]otions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days * * * [but if] it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period." It is not uncommon for defendants to file both the motion for leave and the delayed motion for new trial at the same time, as Bethel did in this case. When faced with a request for new trial more than 120 days after the initial judgment of conviction, courts generally follow a two-step procedure—the court first determines whether the defendant was unavoidably prevented from discovering the evidence, and if so, it grants the motion for leave and addresses the new trial motion on its merits. *See, e.g.*, *State v. Cashin*, 10th Dist. No. 17AP-338, 2017-Ohio-9289, ¶ 15-19. To prevail on the merits, "the defendant must show that the newly discovered evidence upon which the motion is based: (1) discloses a strong probability that it will change the result if a new trial is granted; (2) has been discovered since the trial; (3) is such as could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence." *State v. Dixon*, 10th Dist. No. 18AP-108, 2018-Ohio-4841, ¶ 13, citing *State v. Davis*, 10th Dist. No. 03AP-1200, 2004-Ohio-6065, ¶ 7, and *State v. Petro*, 148 Ohio St. 505 (1947), paragraph one of the syllabus. New trials should not be granted lightly. *Dixon* at ¶ 14, citing *State v. Townsend*, 10th Dist.

No. 08AP-371, 2008-Ohio-6518, ¶ 12.   Further, trial courts may require a defendant to avoid any unreasonable delay in filing such a motion: "[w]hile Crim.R. 33(B) does not provide a specific time limit in which defendants must file a motion for leave to file a delayed motion for new trial, many courts have required defendants to file such a motion within a reasonable time after discovering the evidence."  *See, e.g. State v. Anderson*, 10th Dist. No. 12AP-133, 2012-Ohio-4733, ¶ 17, quoting *State v. Wilson*, 7th Dist. No. 11 MA 92, 2012-Ohio-1505, ¶ 57 (adopting timeliness rule and collecting cases).

### III. Discovery of the Relevant Evidence

{¶ 20} As indicated above, the trial court's initial determination under both R.C. 2953.23(A)(1)(a) and Crim.R. 33(B) must be whether the defendant was "unavoidably prevented" from discovering the evidence that forms the basis of the claim.  "A defendant is unavoidably prevented from discovering the new evidence within the [120-day] time period for filing a motion for new trial when that defendant had no knowledge of the evidence supporting the motion for new trial and could not have learned of the existence of the evidence within the time prescribed for filing such a motion through the exercise of reasonable diligence."  *Bethel III* at ¶ 13, citing *State v. Berry*, 10th Dist. No. 06AP-803, 2007-Ohio-2244, ¶ 19.  The defendant cannot claim evidence was undiscoverable simply because no one made efforts to obtain the evidence sooner.  *See Cashin* at ¶ 16, citing *State v. Graggs*, 10th Dist. No. 16AP-611, 2017-Ohio-4454, ¶ 15; and *State v. Noor*, 10th Dist. No. 16AP-340, 2016-Ohio-7756, ¶ 17.  Conclusory allegations are similarly insufficient to prove the defendant was unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.  *See, e.g.*, *Cashin* at ¶ 17, citing *Noor* at ¶ 17.

{¶ 21} A defendant must demonstrate to the trial court by clear and convincing evidence he was unavoidably prevented from discovering such evidence.  *Cashin* at ¶ 18. Clear and convincing evidence is " 'proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' "  *Id.*, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).  Appellate courts review the trial court's determination whether the defendant was unavoidably prevented from discovering evidence for an abuse of discretion, and a reviewing court may not determine a trial court abused its discretion simply because

No. 19AP-324

it might not have reached the same conclusion. *Id.* at ¶ 19, citing *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

## IV. Exculpatory Evidence

**{¶ 22}** "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three components or essential elements of a *Brady* prosecutorial misconduct claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Banks v. Dretke*, 540 U.S. 668, 691, (2004), citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009), citing *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' of a different result" is one in which the suppressed evidence " 'undermines confidence in the outcome of the trial.' " *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). *See also Turner v. United States*, 137 S. Ct. 1885, 1893 (2017).

## V. Analysis

**{¶ 23}** In accordance with all the foregoing, Bethel has identified two crucial questions in his brief: whether the trial court abused its discretion either by concluding Bethel was not unavoidably prevented from the discovery of evidence set forth in Summary 86, or by concluding the evidence did not create a reasonable probability of a different result at trial. We are compelled to conclude the trial court did not abuse its discretion in resolving either question.

**{¶ 24}** First, Bethel has not clarified either in the trial court or in this court precisely when he learned of Summary 86. He asserts it was "recently discovered" and he "cannot establish through outside witnesses at what point [Summary 86] was finally disclosed to defense counsel, other than that it was post-trial and as the result of a public records request to the police station." (Sept. 10, 2018 Deft.'s Motion at 7; Nov. 23, 2018 Deft.'s Reply at 8.) In light of the ambiguity in Bethel's assertions, the state has suggested Summary 86 was

most likely provided to Bethel's counsel over a decade ago, when a public records request to the Columbus Police Department by a private investigator hired by Bethel's mother yielded over 1,200 pages of records related to the case. Bethel does not specifically reject this suggestion, but even assuming Bethel received the document from a different public records request, the trial court correctly reasoned Bethel received Summary 86 no later than May 10, 2017, when Bethel obtained an affidavit from Withers in support of the information contained in the document. Given the 16-month delay between the date Withers signed his affidavit and the date Bethel's motions were ultimately filed, as well as the uncertainty regarding the date Summary 86 itself was disclosed, it is well within the discretion of the trial court to have concluded the delay in filing these motions was unreasonable.

{¶ 25} Moreover, while Bethel and his attorneys were not provided a copy of Summary 86 prior to his trial and were not directly notified of Withers' statements, it is equally true Bethel was not prevented by the state from discovering Chavis' statements to Withers. As Bethel's co-defendant Chavis had a reason to discuss the case with Bethel and the two had corresponded about the case after they had both been indicted. Moreover, prior to executing his proffer and plea of guilty to the charges, Bethel and his attorney met and spoke privately with Chavis and his attorney, and accordingly were presented with an opportunity to evaluate the evidence that would be presented against both men at trial. And Bethel should have suspected Chavis was making statements prior to the trial—although it did not call him, the state disclosed Withers' name on its witness list and specifically identified him as being incarcerated at the Franklin County Jail. Taken in sum, all this evidence would make it difficult for us to conclude the trial court abused its discretion in finding Bethel had not met his burden to establish by clear and convincing evidence he was unavoidably prevented from discovering the information in Summary 86.

{¶ 26} But even if we presume the ambiguity regarding the date of Bethel's discovery of Summary 86 somehow establishes he was "unavoidably prevented" from discovery of Chavis' statements to Withers, and even if we assume the complete truth of the statements in Summary 86 as well as Bethel's interpretation of it as implicating Langbein, the only fact the document establishes beyond doubt is Bethel's own trial testimony was false.

{¶ 27} Bethel testified at trial both he and Chavis were at Bethel's mother's house at the time Reynolds and Hawks were shot to death. Withers' suggestion Chavis admitted to being present at the shootings would have upset that alibi defense—and that alibi defense was really all Bethel had left. He had already admitted shooting Reynolds and Hawks, he had already admitted he lied when he agreed to testify against Chavis, he testified he had "piece[d] together" a false story "that would seem reasonable to believe" in the proffered statement he made in connection with the plea, and he admitted on cross-examination he would have no trouble lying if it would it would allow him to avoid a death sentence. (Tr. Vol. XIII at 87.) All Summary 86 would have established is that he was lying yet again, about the most important evidence he had left to save his own life.

{¶ 28} As a result, we cannot say the trial court abused its discretion, either in concluding Bethel has not shown by clear and convincing evidence he was unavoidably prevented from the discovery of Summary 86, or in concluding Summary 86 fails to create a reasonable probability of a different result at Bethel's trial. Similarly, Bethel cannot show by clear and convincing evidence that, but for constitutional error at trial, no reasonable jury would have found him guilty or eligible for a death sentence. And we cannot say the state's failure to disclose this evidence prior to trial is in violation of *Brady*, because Bethel cannot demonstrate prejudice as a result of the State's failure to disclose.

{¶ 29} Accordingly, both of Bethel's assignments of error are overruled. The judgment of the trial court denying his motion for leave to file a motion for new trial and his postconviction petition is affirmed.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.

————————————