[Cite as *State v. Hill*, 2023-Ohio-1954.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 22AP-576 |
| v. | : | (C.P.C. No. 18CR-5181) |
| Mark A. Hill, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on June 13, 2023

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

**On brief:** *Mark A. Hill*, pro se.

---

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} This is an appeal by defendant-appellant, Mark A. Hill, from a judgment of the Franklin County Court of Common Pleas denying his motion for leave to file a motion for new trial, his motion for new trial, and motion for public records.

## I. Facts and Procedural History

{¶ 2} On October 18, 2018, appellant was indicted on one count of aggravated burglary, in violation of R.C. 2911.11, and one count of felonious assault, in violation of R.C. 2903.11. Each count also carried a repeat violent offender ("RVO") specification, pursuant to R.C. 2941.149(A).

{¶ 3} The matter came for trial before a jury beginning on August 20, 2019. The relevant facts of the case are summarized in this court's prior decisions in *State v. Hill*, 10th Dist. No. 19AP-711, 2021-Ohio-132 ("*Hill I*"), and *State v. Hill*, 10th Dist. No. 21AP-16, 2021-Ohio-3899 ("*Hill II*").

{¶ 4} In *Hill II*, this court provided the following summary of the facts regarding the incident. The charges of aggravated burglary and felonious assault arose out of events on August 25, 2018 involving Martie Jacobs, age 53, who "resided in the home of Rita Hamm, the grandmother of appellant's girlfriend, Brittany Hamm." *Hill II* at ¶ 2. That evening, "an intoxicated Jacobs got into an argument with Brittany." *Id.* According to the testimony of Jacobs, "Brittany threatened him with a knife; he wrestled the knife from her, threw her on the floor, and then fell on top of her." *Id.* At that time, "Rita intervened and pushed Jacobs off Brittany." *Id.* Following the incident, Jacobs, "who suffers from debilitating arthritis and degenerative disc disease," went to his bedroom, "shut the door, took his medications, and went to bed." *Id.*

{¶ 5} Later, Jacobs "woke from a light sleep to find appellant standing in his bedroom holding a sledgehammer." *Id.* at ¶ 3. Appellant then "hit Jacobs with the sledgehammer in the face near his left eye" and, "[a]fter Jacobs fell to the floor, appellant struck him with the sledgehammer on the other side of his face." *Id.*

{¶ 6} Appellant and Brittany left the house, and "Rita discovered Jacobs on the bathroom floor covered in blood." *Id.* at ¶ 4. Jacobs was transported to a hospital "where he underwent a 12-hour surgery to reconstruct one eye socket and his jaw"; he "subsequently underwent extensive rehabilitation as well as multiple follow-up surgeries." *Id.* The medical records of Jacobs, "including an x-ray, demonstrated significant trauma and damage to his skull," and "a portion of the left side of his face is permanently disfigured." *Id.*

{¶ 7} Appellant testified on his own behalf and stated that "Brittany called him after her argument with Jacobs and reported that Jacobs had punched her in the eye." *Id.* at ¶ 5. Appellant then "drove to the house," and "Brittany was crying when he arrived." *Id.* Appellant testified he "entered Jacobs' bedroom, confronted him about assaulting Brittany, and warned him to stay away from her." *Id.* According to appellant, "Jacobs took a swing at [him]," but appellant "dodged the blow and hit Jacobs four times using only his fist; he denied striking Jacobs with a sledgehammer." *Id.*

{¶ 8} Following deliberations, the jury returned verdicts finding appellant guilty of felonious assault and not guilty of aggravated burglary. The trial court separately found appellant guilty of the RVO specification. By judgment entry filed September 20, 2019, the trial court sentenced appellant to an aggregate 12-year term of incarceration.

{¶ 9} Appellant filed a direct appeal of his conviction. While the appeal was pending, appellant filed a pro se petition for postconviction relief. By entry filed December 17, 2020, the trial court denied appellant's petition for postconviction relief, and this court affirmed the denial of postconviction relief in *Hill II*.

{¶ 10} On January 21, 2021, this court rendered its decision on appellant's direct appeal in *Hill I*, affirming the judgment of the trial court. In that decision, this court rejected appellant's arguments that the trial court erred in denying his motion for acquittal and that his conviction for felonious assault was against the manifest weight of the evidence. Appellant filed a pro se application for reconsideration and for en banc consideration, which this court denied. *State v. Hill*, 10th Dist. No. 19AP-711 (May 13, 2021) (memorandum decision).

{¶ 11} On April 8, 2021, appellant filed a pro se application to reopen his appeal pursuant to App.R. 26(B). By memorandum decision, this court denied appellant's application for reopening. *State v. Hill*, 10th Dist. No. 19AP-711 (Sept. 2, 2021) (memorandum decision).

{¶ 12} On March 11, 2022, appellant filed a motion for leave to file a motion for new trial pursuant to Crim.R. 33(A)(2) and (6). Attached to his motion for leave, appellant provided his own affidavit and several exhibits. On the same date he filed his motion for leave, appellant filed a Crim.R. 33 motion for new trial "based upon newly discovered *Brady* [*v. Maryland*, 373 U.S. 83 (1963)] material evidence." On March 23, 2022, appellant filed a request for an order granting access to obtain public records from the Columbus Division of Police. On April 11, 2022, plaintiff-appellee, State of Ohio, filed a memorandum in opposition to appellant's motion for leave to file a motion for new trial. On August 19, 2022, the trial court filed an entry denying appellant's motion for leave to file a motion for new trial, and also denying the motion for new trial and motion for public records.

## II. Assignments of Error

{¶ 13} On appeal, appellant, pro se, sets forth the following three assignments of error for our review:

> [I.] THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED APPELLANT OF DUE PROCESS AND EQUAL PROTECTION OF THE LAWS WHEN DENYING HIS MOTION FOR LEAVE TO FILE A CRIMINAL RULE 33 MOTION FOR NEW TRIAL, WITHOUT AN EVIDENTIARY HEARING, BASED UPON THE PRIMA FACIE SHOWING

OF NEWLY DISCOVERED EVIDENCE, CONTRARY TO LAW.

[II.] THE TRIAL COURT ABUSED ITS DISCRETION AND DEPRIVED APPELLANT OF DUE PROCESS AND EQUAL PROTECTION OF THE LAWS WHEN DENYING HIS MOTION FOR LEAVE TO FILE A CRIMINAL RULE 33 MOTION FOR NEW TRIAL BASED UPON THE PRIMA FACIE SHOWING OF A *BRADY* MATERIAL EVIDENCE VIOLATION, WITHOUT AN EVIDENTIARY HEARING, CONTRARY TO CLEARLY ESTABLISHED CONSTITUTIONAL LAW.

[III.] THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED APPELLANT DUE PROCESS AND EQUAL PROTECTION OF THE LAWS WHEN DENYING HIS REQUEST FOR THE RELEASE OF PUBLIC RECORDS.

## III. Analysis

{¶ 14} Appellant's first and second assignments of error are interrelated and will be considered together. Under these assignments of error, appellant challenges the trial court's denial of his motion for leave to file a motion for new trial without an evidentiary hearing based on his claims of newly discovered evidence and a *Brady v. Maryland*, 373 U.S. 83 (1963) violation.

{¶ 15} Under Ohio law, "[a] trial court's ruling on a motion for leave to move for a new trial is reviewed for an abuse of discretion." *State v. McNeal*, 169 Ohio St.3d 47, 2022-Ohio-2703, ¶ 13. Similarly, the decision by a trial court " 'whether to conduct an evidentiary hearing on a motion for leave to file a motion for a new trial is discretionary and not mandatory.' " *State v. Ambartsoumov*, 10th Dist. No. 12AP-878, 2013-Ohio-3011, ¶ 13, quoting *State v. Cleveland*, 9th Dist. No. 08CA009406, 2009-Ohio-397, ¶ 54. More specifically, "[a] criminal defendant 'is only entitled to a hearing on a motion for leave to file a motion for a new trial if he submits documents which, on their face, support his claim that he was unavoidably prevented from timely discovering the evidence at issue.' " *Id.*, quoting *Cleveland* at ¶ 54, citing *State v. McConnell*, 170 Ohio App.3d 800, 2007-Ohio-1181, ¶ 7 (2d Dist.).

{¶ 16} In the present case, appellant sought leave to file a motion for new trial based on Crim.R. 33(A)(2), prosecutorial misconduct, and Crim.R. 33(A)(6), newly discovered evidence. Under Crim.R. 33(A)(2), a trial court may grant a defendant a new trial based on

"[m]isconduct of the * * * prosecuting attorney." A motion for a new trial under Crim.R. 33(A)(2) "must be filed within 14 days after the verdict was rendered, unless clear and convincing proof shows the defendant was unavoidably prevented from filing his motion for new trial within that 14-day period." *State v. G.F.*, 10th Dist. No. 18AP-201, 2019-Ohio-3673, ¶ 18, citing Crim.R. 33(B).

{¶ 17} Under Crim.R. 33(A)(6), a trial court may grant a defendant a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." In general, " '[n]ewly discovered evidence' is 'evidence of facts in existence at the time of trial of which the party seeking a new trial was justifiably ignorant.' " *State v. Holzapfel*, 10th Dist. No. 10AP-17, 2010-Ohio-2856, ¶ 20, quoting *State v. Love*, 1st Dist. No. C-050131, 2006-Ohio-6158, ¶ 43, citing *Campbell v. Am. Foreign S.S. Corp.*, 116 F.2d 926, 928 (2 Cir.1941).

{¶ 18} Pursuant to Crim.R. 33(B), "[a] motion for new trial based on newly discovered evidence must be filed within 120 days after the jury verdict or the court's judgment." *G.F.* at ¶ 20. A trial court, however, "may grant a motion for leave to file a motion for new trial based on newly discovered evidence beyond the 120-day deadline in certain circumstances." *Id.* Specifically, Crim.R. 33(B) "excuses a defendant's failure to move for a new trial within the * * * 120-day deadline * * * if the defendant proves by clear and convincing evidence that he or she was unavoidably prevented from discovering the evidence on which the motion would be based within that time." *McNeal* at ¶ 16.

{¶ 19} A criminal defendant "is unavoidably prevented from discovering new evidence if he 'had no knowledge of the existence of the new evidence and, in the exercise of reasonable diligence, could not have learned of its existence within the time prescribed for filing a motion for new trial.' " *State v. Dodson*, 10th Dist. No. 22AP-388, 2023-Ohio-701, ¶ 16, quoting *State v. Lundy*, 10th Dist. No. 19AP-505, 2020-Ohio-1585, ¶ 11. If a defendant "makes that showing, the motion for a new trial must be filed within seven days of the trial court's order finding that the defendant was unavoidably prevented from discovering the evidence within the time prescribed by Crim.R. 33(B)." *McNeal* at ¶ 16. A criminal defendant "may satisfy the 'unavoidably prevented' requirement contained in Crim.R. 33(B) by establishing that the prosecution suppressed the evidence on which the defendant would rely in seeking a new trial." *Id.* at ¶ 17, citing *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, ¶ 25, 57 ("*Bethel I*").

{¶ 20} This court has noted "[i]t is not uncommon for defendants to file both the motion for leave and the delayed motion for new trial at the same time." *State v. Bethel*, 10th Dist. No. 19AP-324, 2020-Ohio-1343, ¶ 19 ("*Bethel II*"). When addressing "a request for new trial more than 120 days after the initial judgment of conviction, * * * the court first determines whether the defendant was unavoidably prevented from discovering the evidence, and if so, it grants the motion for leave and addresses the new trial motion on its merits." *Id.* In order to "prevail on the merits, 'the defendant must show that the newly discovered evidence upon which the motion is based: (1) discloses a strong probability that it will change the result if a new trial is granted; (2) has been discovered since the trial; (3) is such as could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence.' " *Id.*, quoting *State v. Dixon*, 10th Dist. No. 18AP-108, 2018-Ohio-4841, ¶ 13, citing *State v. Davis*, 10th Dist. No. 03AP-1200, 2004-Ohio-6065, ¶ 7, and *State v. Petro*, 148 Ohio St. 505 (1947), paragraph one of the syllabus.

{¶ 21} In his motion for leave to file a motion for new trial, appellant asserted he "recently discovered that the prosecuting attorney, police and state witnesses have withheld the existence and identity of one, and a probable second, eyewitness to the events occurring on August 25, 2018, whom can provide testimony favorable to [appellant], evidence which is material and exculpatory in nature." (Appellant's Mot. for Leave at 1.) More specifically, appellant argued that "[o]n, or about, March 1, 2021," while he was "reviewing the transcripts of the jury trial proceedings held in this case," he "discovered that Rita Hamm had testified that Brittany had gone across the street and sat with a neighbor crying after Jacobs punched her in the eye for refusing his sexual offer in August 2018." (Appellant's Mot. for Leave at 7.) According to appellant, during "an April 2021 phone conversation, [he] asked Brittany who the neighbor was that [Rita] had mentioned in her trial testimony," and Brittany "informed [appellant] that the neighbor's name is Jennifer [Pell] and that she was sitting out in front of her home and witnessed Jacobs proposition her for sex and then punch her in the eye with his fist when she told him no." (Appellant's Mot. for Leave at 7.) Appellant "then asked Brittany who Scott Crawford was that resided at the same address as Jennifer and was told that they are a couple." (Appellant's Mot. for Leave at 7.)

{¶ 22} Thus, the basis for appellant's motion for leave was his claim the prosecuting attorney and "state witnesses" had withheld the identity of one or two eyewitnesses to the events on August 25, 2018; specifically, that two neighbors, Pell and Crawford, who lived across the street may have witnessed an altercation between Jacobs and Brittany earlier that evening, prior to the time appellant arrived and entered Rita's residence to confront Jacobs in his bedroom.

{¶ 23} In addressing appellant's motion for leave, the trial court initially noted that appellant's contention he was "reviewing trial transcripts from August 2019 'and discovered that Rita Hamm had testified' to certain things," including, according to appellant, testimony that Brittany had gone across the street and sat with a neighbor after Jacobs punched her in the eye, "is not newly discovered evidence," as appellant "was present at his trial and heard all the witness testimony by Ms. Hamm and others." (Aug. 19, 2022 Decision at 3.) The trial court further noted that Crawford, one of the two neighbors who lived across the street and who, appellant contends, resided with Pell, was interviewed in 2018 by a defense investigator. Crawford told the investigator " '[Jacobs] is a nice guy and would never do something like that. [Crawford] believes Brittany's accusations are fabricated and were made entirely to cause a stir.' " (Aug. 19, 2022 Decision at 4.)

{¶ 24} The trial court also addressed the fact that Brittany, who appellant contends told him in 2021 the name of the second neighbor, Pell, who resided with Crawford in the house across the street, was also the subject of a pre-trial interview "by an investigator for [appellant's] attorney." (Aug. 19, 2022 Decision at 3.) The court observed that Brittany was viewed by both sides as "an unreliable witness if called at trial" based on a history of drug use, and that "[t]his also explains the reason neither trial counsel chose to seek her arrest when she ignored a trial subpoena." (Aug. 19, 2022 Decision at 3.)

{¶ 25} The trial court concluded "[t]here is * * * nothing here that has not already been addressed," as "[i]nformation about Brittany and Mr. Crawford was available to both sides," and there was "no suggestion in the record" that "Crawford's live-in partner," Pell, "would have testified favorably to [appellant], or held an unfavorable view of Jacobs." (Aug. 19, 2022 Decision at 4.)

{¶ 26} Upon review, we agree with the trial court's determination that the evidence at issue is not newly discovered within the meaning of Crim.R. 33(A)(6). At trial, Rita provided testimony that Brittany, after an initial argument with Jacobs, "went across the

street" and "[sat] down" with a neighbor. (Aug. 20, 2019 Tr. Vol. I at 46.) As noted by the trial court, appellant's contention that he "discovered" through his review of the trial transcripts what Rita testified to regarding Brittany's interaction with neighbors across the street is not newly discovered evidence as he was present at trial and heard the testimony at issue, i.e., the information was known at that time, not discovered after trial. *See, e.g.*, *State v. Dunkle*, 10th Dist. No. 19AP-820, 2021-Ohio-1035, ¶ 19 (noting this court has "cited federal case law establishing that ' "if a defendant is aware of the evidence at the time of trial, then it is not newly discovered evidence under Rule 33" ' ") (Internal citations omitted.); *State v. Craig*, 8th Dist. No. 97478, 2012-Ohio-1749, ¶ 12 ("evidence appellant claims is newly discovered was either known to him at the time of trial or could have been found").

{¶ 27} Appellant contends he first learned of the identity of these two potential eyewitnesses in 2021 from Brittany, who appellant had a relationship with at the time of the events, and who was with appellant when he entered Rita's house that evening to confront Jacobs. As noted by the trial court, however, the record indicates a defense investigator interviewed Brittany and one of the two alleged neighbor-eyewitnesses prior to trial. Specifically, in December 2018, a defense investigator interviewed Crawford, who resided across the street in the same house with the other alleged eyewitness neighbor, Pell. As also observed by the trial court, the record indicates Brittany was not only interviewed by a defense investigator but was also the subject of a subpoena and failed to appear for trial. We note appellant did not submit an affidavit from Brittany in support of his motion for leave, and he has failed to show that any purported new information Brittany provided to him in 2021 regarding her interaction with neighbors at the time of the events at issue could not have been discovered prior to trial. Here, appellant has not presented "newly discovered" evidence indicating his counsel was unaware of the neighbors across the street, including one who was interviewed by a defense investigator. The fact appellant himself may not have known the identity of one of the neighbors does not undermine the trial court's determination that the identity of these potential eyewitnesses was either known to the defense or could have been discovered prior to trial, and appellant has failed to demonstrate, by clear and convincing evidence, how he was unavoidably prevented from discovering the "new" evidence he is relying on to support his motion.

{¶ 28} The trial court also determined, in ruling on the motion for leave, there was "no colorable basis to claim a *Brady* violation." (Aug. 19, 2022 Decision at 5.) Specifically, the trial court held in part:

> First, [appellant's] affidavit does not identify any withheld information about [Pell], the neighbor. [Appellant] says he was not told about her by his lawyers, and that none of the discovery contained a witness statement from her. * * * That does not establish any basis to conclude the information was withheld. He has filed material indicating that a defense investigator interviewed both Rita Hamm and one of the two neighbors living together who are now claimed to be able to talk about Mr. Jacobs interaction with Brittany. The neighbor who was interviewed lived in the same home as [Pell]. Failing to disclose evidence known to the defense does not constitute a *Brady* violation.

(Aug. 19, 2022 Decision at 5.)

{¶ 29} Alternatively, the trial court concluded the allegedly withheld information was not material, holding in part:

> One reason this information is not material is that merely impeaching a witness – here Mr. Jacobs about his interaction with Brittany Hamm earlier in the day and outside the presence of [appellant] assuming for the moment that the neighbors felt that it was inappropriate or assaultive behavior as denied by Jacobs – is not directly relevant to whether [appellant] criminally assaulted Jacobs hours later. * * * Seeking more impeachment of the victim is not a legitimate basis for a new trial under Ohio law.

(Aug. 19, 2022 Decision at 5-6.)

{¶ 30} Finally, the trial court noted, appellant's trial strategy "did not hinge only on the testimony of * * * Jacobs," as Rita "was present when the assault occurred" and appellant "himself testified and did not deny hitting Jacobs." (Aug. 19, 2022 Decision at 6.) Further noting that Jacobs provided his own testimony, the court observed that the medical evidence submitted "circumstantially confirmed the other evidence that a violent, unprovoked assault occurred just as Jacobs claimed." (Aug. 19, 2022 Decision at 6.) Thus, the court concluded, while appellant may have believed he was "defending the honor of Brittany, or responding to an earlier assault on her, the jury concluded that neither reason justified him rushing into Jacobs['] bedroom late at night and brutally assaulting Jacobs [as] he was barely awake." (Aug. 19, 2022 Decision at 6.)

{¶ 31} In *Brady*, "the Supreme Court of the United States recognized that the prosecution has an affirmative duty to disclose evidence that is favorable to the accused and material to the accused's guilt or punishment." *McNeal* at ¶ 19, citing *Brady* at 87. In order to establish a *Brady* violation, a defendant must show: "(1) that the prosecution withheld evidence, (2) that the defense was not aware of the evidence, and (3) that the evidence withheld was material." *State v. Holloman*, 10th Dist. No. 06AP-608, 2006-Ohio-6789, ¶ 12, citing *State v. Johnston*, 39 Ohio St.3d 48 (1988), paragraph four of the syllabus.

{¶ 32} On review, the affidavit and materials submitted by appellant did not show he was unavoidably prevented from discovery of the facts on which he relies regarding a potential *Brady* violation. As found by the trial court, appellant has failed to identify any documents, including "any withheld information about [Pell]," not provided during discovery which might have contained exculpatory materials. (Aug. 19, 2022 Decision at 5.) Further, as previously discussed, the identity of Crawford was known to the defense and he could have been called as a witness; similarly, Brittany, who purportedly knew and later informed appellant of the identity of the female neighbor, was a potential witness and was subpoenaed before trial. Under Ohio law, "there can be no *Brady* violation where the defendant was aware of the evidence allegedly withheld." *State v. Hawk*, 10th Dist. No. 21AP-265, 2021-Ohio-4533, ¶ 20. Here, the identity of Crawford was not suppressed by the state, nor do the materials submitted in support of the motion for leave suggest the state withheld information from appellant regarding potential favorable testimony by Pell. Accordingly, because appellant has failed to show he was unavoidably prevented from discovery of the facts on which he relies in support of an alleged *Brady* violation, or that the prosecution suppressed this evidence, the trial court did not err in denying appellant's motion for leave to file a new trial motion on grounds of prosecutorial misconduct.

{¶ 33} Finally, even assuming appellant had established he was unavoidably prevented from the discovery of the "new" information he relies on, or that the state suppressed the identity of the neighbor(s), we would agree with the trial court's further determination that appellant failed to establish the purported evidence was material under the third element of *Brady*. Under that element, evidence is material " ' "if there is reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ' " *Bethel I* at ¶ 19, quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995), quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985). In this

respect, "[a] defendant establishes a *Brady* violation 'by showing that the favorable [but suppressed] evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " *McNeal* at ¶ 21, quoting *Kyles* at 434.

**{¶ 34}** As noted by the trial court, even accepting the claim one or possibly two neighbors across the street observed Jacobs' behavior "earlier in the day" involving his interaction with Brittany, neither of these individuals "witness[ed] the criminal assault perpetrated by [appellant] some hours later" inside Rita's residence. (Aug. 19, 2022 Decision at 5; 3.) Moreover, the alleged exculpatory evidence would have been cumulative to the testimony of Rita, who testified as to the earlier altercation between Brittany and Jacobs and who also testified as to the events later that evening when appellant and Brittany entered her residence, at which time appellant went into Jacobs' bedroom and repeatedly struck Jacobs, causing severe and permanent injuries. *See State v. Buehner*, 8th Dist. No. 109699, 2021-Ohio-4435, ¶ 42, quoting *State v. Bonilla*, 2d Dist. No. 2008 CA 68, 2009-Ohio-4784, ¶ 26 ("There is * * * no *Brady* violation 'if the evidence that was allegedly withheld is merely cumulative to evidence presented at trial.' "). In sum, appellant has failed to show a reasonable probability that the result of the trial would have been different had the purportedly withheld information been disclosed.

**{¶ 35}** Upon review, the documentation submitted by appellant does not, on its face, demonstrate by clear and convincing evidence that he was unavoidably prevented from discovering the evidence on which he seeks to base his motion for leave to file a motion for new trial or from timely filing a motion for new trial based on prosecutorial misconduct under *Brady*. We further find the trial court did not err in denying the motion for leave without holding a hearing on the motion. *See State v. Peterson*, 10th Dist. No. 19AP-595, 2020-Ohio-4579, ¶ 24 ("because neither the motion nor the supporting documents, on their face, support [the] appellant's claim that discovery of the information was unavoidably delayed, the trial court did not abuse its discretion in failing to conduct a hearing on the motion"). Accordingly, the trial court did not abuse its discretion in denying appellant's motion for leave to file a motion for new trial.

**{¶ 36}** Based on the foregoing, appellant's first and second assignments of error are not well-taken and are overruled.

**{¶ 37}** Under his third assignment of error, appellant asserts the trial court erred in denying his motion for access to public records. In his March 23, 2022 motion, appellant

sought an order granting him "public records access" to "law enforcement's interviews of Rita Hamm, Jennifer Pell and Scott Crawford." The trial court denied the motion, finding appellant had failed to show a "colorable or justiciable claim." (Aug. 19, 2022 Decision at 7.)

{¶ 38} R.C. 149.43(B)(8) provides in part:

> A public office * * * responsible for public records is not required to permit a person who is incarcerated pursuant to a criminal conviction * * * to inspect or to obtain a copy of any public record concerning a criminal investigation or prosecution * * *, unless the request to inspect or to obtain a copy of the record is for the purpose of acquiring information that is subject to release as a public record under this section and the judge who imposed the sentence or made the adjudication with respect to the person, or the judge's successor in office, finds that the information sought in the public record is necessary to support what appears to be a justiciable claim of the person.

{¶ 39} Ohio courts have held R.C. 149.43(B)(8) "creates a heightened standard for convicted inmates requesting copies of public records concerning a criminal investigation or prosecution." *State v. Heid*, 4th Dist. No. 14CA3655, 2015-Ohio-1467, ¶ 12. Thus, "[b]y enacting this provision '[t]he General Assembly clearly evidenced a public-policy decision to restrict a convicted inmate's unlimited access to public records in order to conserve law enforcement resources.' " *Id.* at ¶ 13, quoting *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, ¶ 14. To achieve such purpose, " 'R.C. 149.43(B)(8) requires an incarcerated criminal offender who seeks records relating to an inmate's criminal prosecution to obtain a finding by the sentencing judge or the judge's successor that the requested information is necessary to support what appears to be a justiciable claim.' " *Id.*, quoting *State ex rel. Fernbach v. Brush*, 133 Ohio St.3d 151, 2012-Ohio-4214, ¶ 2, citing *State ex rel. Chatfield v. Flautt*, 131 Ohio St.3d 383, 2012-Ohio-1294. This court reviews a trial court's "decision on whether the inmate requesting these records established a justiciable claim under an abuse of discretion standard." *Id.* at ¶ 15.

{¶ 40} Under the facts in *Heid*, the appellant sought records under R.C. 149.43(B)(8) to support his petition for postconviction relief, which the trial court denied. On appeal, the reviewing court held the appellant failed to establish that records sought "contained information that would be either necessary or material" to his petition. *Heid* at

¶ 18. Specifically, the court held, where the appellant failed to show the requested records would contain evidence to support a finding he was "unavoidably prevented" from the discovery of facts on which he relied to establish his right to file an untimely petition, the trial court did not abuse its discretion in denying the appellant's request for public records under R.C. 149.43(B)(8). *Id.* In *State v. Warren*, 2d Dist. No. 28092, 2019-Ohio-3522, ¶ 91, the court held that records requested by an appellant under R.C. 149.43(B)(8) were "not pieces of newly discovered evidence" that he "could have used to support a motion for new trial" and had "no bearing" on his "delay in filing his motion for leave to file a motion for new trial." The court thus concluded such records "were not material to the pending motion for leave to file a motion for new trial." *Id.*

{¶ 41} In the present case, as addressed under the prior assignments of error, the evidence relating to potential eyewitnesses, i.e., the identity of one or two neighbors, was not newly discovered and was available to both sides. Regarding appellant's request for public records under R.C. 149.43(B)(8), and similar to the requests in *Heid* and *Warren*, appellant cannot show the requested records would have supported the argument he "was 'unavoidably prevented' from discovery of the facts" on which he relies to satisfy the requirements for filing a motion for leave to file a delayed motion for new trial, nor has appellant shown, as found by the trial court, the information sought from these individuals was material, i.e., necessary to support a justiciable claim. *Heid* at ¶ 18.

{¶ 42} Accordingly, the trial court did not abuse its discretion in denying appellant's request for records under R.C. 149.43(B)(8). Appellant's third assignment of error is not well-taken and is overruled.

## IV. Conclusion

{¶ 43} Based on the foregoing, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

JAMISON and BOGGS, JJ., concur.

_____